**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Greenbelt Division)**

| | |
|---|---|
| **SARAH WALKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No.: 1:22-cv-03312-APM** |
| | ) |
| **NEW VENTURE FUND,** *et al.*, | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT NEW VENTURE FUND'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Dated: June 2, 2023

Joseph E. Schuler (DC Bar. No. 296269)
Matthew E. Kreiser (No. MD0053)
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, VA 20191
joseph.schuler@jacksonlewis.com
bernard.dennis@jacksonlewis.com

***Counsel for New Venture Fund***

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction ............................................................................................................... 1

II.   Factual and Procedural Background ........................................................................ 3

    A.    Factual Allegations in the Amended Complaint ............................................ 3

        *Background of NVF and Its Operations* ................................................... 3

        *Ms. Walker's Employment with NVF* ...................................................... 4

        *Ms. Walker's Internal Complaints* ......................................................... 4

        *NVF Places Ms. Walker on Paid Administrative Leave* ......................... 5

        *NVF Terminates Ms. Walker's Employment* ........................................... 6

        *Ms. Walker Files Suit Claiming Employment Discrimination* ............... 6

            <u>DCHRA "Discrimination on the Basis of Disability" Claims</u> ......... 7

            <u>DCHRA "Discrimination on the Basis of Sex" Claim</u> .................... 8

            <u>DCHRA "Discrimination on the Basis of Race" Claim</u> ................. 8

            <u>DCHRA "Hostile Work Environment" Claim</u> ................................. 8

            <u>DCHRA "Retaliation" Claim</u> .......................................................... 9

    B.    The Dissolution of Secure Democracy, "Successor Liability" Claims, and Plaintiff's DOL Complaint ........................................................................ 10

III.  Legal Standard ....................................................................................................... 11

IV.   Argument ................................................................................................................ 13

    A.    Ms. Walker Fails to State a Claim of Retaliation Against NVF Under the Taxpayer First Act ....................................................................................... 13

    B.    Ms. Walker Fails to State Claims of Race- and Gender-Based Discrimination Against NVF Under the District of Columbia Human Rights Act ...................... 15

        1.    Ms. Walker's Race-Based Discrimination Claim in Court 2 is Barred by the DCHRA's Limitations Period ........................................................... 17

2.      Ms. Walker's Gender-Based Discrimination Claim in Court 3 is Barred by the DCHRA's Limitations Period ............................................................ 18

C.      Ms. Walker Fails to State a Claim of Disability Discrimination Against NVF Under the District of Columbia Human Rights Act.............................................. 18

D.      Ms. Walker Fails to State A Failure to Accommodate Claim Against NVF Under the District of Columbia Human Rights Act.......................................................... 21

E.      Ms. Walker Fails to State a Hostile Work Environment Claim Against NVF Under the District of Columbia Human Rights Act.............................................. 22

1.      Ms. Walker's Hostile Work Environment Claim is Barred by the DCHRA's Limitations Period ................................................................ 22

2.      Ms. Walker Fails to Allege Conduct that Could Amount to an Unlawful Hostile Work Environment Under the DCHRA ...................................... 24

F.      Ms. Walker Fails to State a Retaliation Claim Against NVF Under the District of Columbia Human Rights Act.......................................................... 26

1.      Ms. Walker Fails to Plead that She Was Subject to a Materially Adverse Action................................................................................................ 27

2.      Ms. Walker Fails to Plead a Causal Connection ...................................... 29

G.      Ms. Walker Fails to State a Claim for Intentional Infliction of Emotional Distress Under District of Columbia Law ........................................................... 31

H.      Ms. Walker's Claim Under the TFA Under a "Successor Liability" Theory is Time-Barred ................................................................................................ 33

I.      All of Plaintiff's Claims Against NVF as a Purported Successor to Secure Democracy Are Barred by D.C. Code §29-412.06 .............................................. 34

J.      Because Plaintiff Has Failed to State a Claim Against Secure Democracy for any Cause of Action Asserted in the Amended Complaint, No Successor Liability Can Be Imposed on NVF ...................................................................................... 36

V.      Conclusion ....................................................................................................... 37

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................12

*Baloch v. Kempthorne*,
  550 F.3d 1191 (D.C. Cir. 2008)..........................................................................19, 24

*Barrett v. Covington & Burling LLP*,
  979 A.2d 1239 (D.C. 2009) .................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................12, 33

*Best v. District of Columbia*,
  No. 20-1134, 2022 U.S. Dist. LEXIS 48120 (D.D.C. Mar. 17, 2022) ...........26, 30, 31

*Brady v. Houston Independent School District*,
  113 F.3d 1419 (5th Cir. 1997) ...................................................................................31

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002)....................................................................................12

*Burlington N. & Santa Fe Ry. v. White*,
  548 U.S. 53 (2006) ......................................................................................................28

*Crawford v. Barr*,
  No. 17-798, 2020 U.S. Dist. LEXIS 226771 (D.D.C. Sep. 24, 2020)........................19

*Daniels v. District of Columbia*,
  894 F. Supp. 2d 61 (D.D.C. 2012)..............................................................................32

*DCFS USA, LLC v. District of Columbia*,
  803 F. Supp. 2d 29 (D.D.C. 2011)..............................................................................34

*Democratic Nat'l Comm. v. McCord*,
  416 F. Supp. 505 (D.D.C. 1976).................................................................................34

*Douglas v. Preston*,
  433 F.3d 889 (D.C. Cir. 2006)....................................................................................28

*Elam v. Bd. of Trs.*,
  530 F. Supp. 2d 4 (D.D.C. 2007)................................................................................24

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ........................................................................................24

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996).......................................................................12

*Franklin v. Potter*,
  600 F. Supp. 2d 38 (D.D.C. 2009)..................................................................25

*Giles v. Transit Emps. Fed. Credit Union*,
  794 F.3d 1, (D.C. Cir. 2015)...........................................................................19

*Grandison v. Wackenhut Servs., Inc.*,
  514 F. Supp. 2d 12 (D.D.C. 2007)..................................................................32

*Greer v. Bd. of Trs. of the Univ. of the D.C.*,
  113 F. Supp. 3d 297 (D.D.C. 2015)....................................................13, 30, 31

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ..........................................................................................24

*Hatter v. WMATA*,
  105 F. Supp. 3d 7 (D.D.C. 2015).....................................................................17

*Hoffman v. Hill & Knowlton, Inc.*,
  777 F. Supp. 1003 (D.D.C. 1991)....................................................................33

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006).........................................................................28

*Holloway v. Howard Univ.*,
  206 F. Supp. 3d 446 (D.D.C. 2016).................................................................32

*Homan v. Goyal*,
  711 A.2d 812 (D.C. 1998) ...............................................................................32

*Jones v. Bernanke*,
  557 F.3d 670 (D.C. Cir. 2009).........................................................................26

*Jones v. Castro*,
  168 F. Supp. 3d 169 (D.D.C. 2016).................................................................29

*Keeley v. Small*,
  391 F. Supp. 2d 30 (D.D.C. 2005)...................................................................25

*Kerringan v. Britches of Georgetown, Inc.*,
  705 A.2d 624 (D.C. 1997) .........................................................................32, 33

*Lanci v. Arthur Andersen, LLP*,
  96 Civ. 4009 (WK), 2000 U.S. Dist. LEXIS 3954 (S.D.N.Y. Mar. 28, 2000) ........................... 21

*Leftwich v. Gallaudet Univ.*,
  878 F. Supp. 2d 81 (D.D.C. 2012) ........................................................................... 21, 22, 26

*Lilly v. District of Columbia*,
  No. 15-738, 2023 U.S. Dist. LEXIS 27988 (D.D.C. Feb. 21, 2023) ........................................ 23

*McFarland v. George Washington Univ.*,
  935 A.2d 337 (D.C. 2007) ........................................................................................ 31

*McKinney v. G4S Gov't Sols., Inc.*,
  771 F. App'x 130 (4th Cir. 2017) .............................................................................. 33

*Munoz v. Bd. of Trustees of Univ. of Dist. of Columbia.*,
  590 F. Supp. 2d 21 (D.D.C. 2008) .............................................................................. 16

*Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*,
  357 F. Supp. 2d 287 (D.D.C. 2005) ............................................................................ 13

*Performance Contracting, Inc. v. Rapid Response Constr., Inc.*,
  267 F.R.D. 422, 424 (D.D.C. 2010) ............................................................................ 12

*Pitt v. District of Columbia*,
  491 F.3d 494 (D.C. Cir. 2007) ................................................................................. 32

*Reid v. Buttigieg*,
  No. 20-1262, 2023 U.S. Dist. LEXIS 30379 (D.D.C. Feb. 23, 2023) ................................... 28, 29

*Rudder v. Williams*,
  47 F. Supp. 3d 47 (D.D.C. 2014) .............................................................................. 12

*Russell v. Principi*,
  257 F.3d 815 (D.C. Cir. 2001) ................................................................................. 28

*Segal v. Harris Teeter Supermarkets, Inc.*,
  No. 15-1496, 2016 U.S. Dist. LEXIS 171758 (D.D.C. Dec. 13, 2016) ................................. 30, 31

*Sims v. Sunovion Pharms., Inc.*,
  No. 17-2519, 2019 WL 690343 (D.D.C. Feb. 19, 2019) ....................................................... 16

*Smith v. Jackson*,
  539 F. Supp. 2d 116 (D.D.C. 2008) ........................................................................... 23, 26

*Stewart v. Evans*,
  275 F.3d 1126 (D.C. Cir. 2002) ................................................................................. 25

v

*Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*,
   31 F.3d 209 (4th Cir. 1994) ......................................................................21

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013) ............................................................................30

*Wade v. District of Columbia*,
   780 F. Supp. 2d 1 (D.D.C. 2011) .............................................................25

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) .........................................................13

*Whitaker v. Nash Cnty.*,
   No. 5:11-CV-15-FL, 2012 WL 3840375 (E.D.N.C. Sept. 5, 2012), *aff'd,* 504 F. App'x 237 (4th Cir. 2013) ................................................................................................21

*Wicks v. Am. Transmission Co., LLC*,
   701 F. Supp. 2d 38 (D.D.C. 2010) ...........................................................24

*Woodruff v. Peters*,
   482 F.3d 521 (D.C. Cir. 2007) .................................................................30

## STATUTES

D.C. Code §2-1402.11(a)(1) ...........................................................................16, 19

D.C. Code §2-1402.61(a) ...................................................................................26

D.C. Code §2-1403.16(a) ..............................................................16, 18, 21, 22, 24

D.C. Code §29-412.02 ..................................................................................11, 36

D.C. Code §29-412.06 ...............................................................................2, 35, 36

26 U.S.C. §7623(d)(1)(A) .................................................................................14

26 U.S.C. §7623(d)(2)(B) ............................................................................14, 15

Defendant, New Venture Fund ("Defendant" or "NVF"), by counsel and pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7, submits the following Memorandum of Law in support of its Motion to Dismiss the Amended Complaint filed against it by Plaintiff Sarah Walker ("Plaintiff" or "Ms. Walker") in its entirety (the "Motion"). In support thereof, NVF states as follows:

## I.     Introduction

Plaintiff, who for a period was employed half time by NVF in its capacity as the fiscal sponsor[1] of a project called Voting Rights Lab, then a non-profit entity in formation, has brought, a disorganized, confusing, everything but the kitchen sink pleading, alleging claims against NVF and its co-defendants for: (1) retaliation in violation of the Taxpayer First Act, 26 U.S.C. §7623(d) ("TFA"); (2) "discrimination", "retaliation" and "hostile work environment" based on race, sex and disability in violation of the District of Columbia Human Rights Act, D.C. Code §2-1402.11 *et. seq.* ("DCHRA"); and (3) Intentional Infliction of Emotional Distress ("IIED") under District of Columbia common law.

Plaintiff's claim under the TFA is barred because she failed to timely file a complaint with

---

[1]     NVF is a public charity that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and overseen by an independent board of directors with extensive experience in philanthropy and nonprofit management. It was founded in 2006 in response to demand from leading philanthropists for an efficient, cost-effective, and time-saving platform to launch and operate public interest projects. In effect NVF serves as a host platform for projects that that are **fiscally sponsored** by NVF using funds contributed by such philanthropists or other public contributions. As explained further at the embedded link, in essence the fiscal-sponsor public charity serves as the administrative "home" of a sponsored cause that has not yet applied and been approved for tax-exempt status in its own right. NVF executes some of philanthropy's most complex domestic and international projects and partners with many of the nation's leading foundations. NVF includes the information in this paragraph to place in context background circumstances for Ms. Walker's employment by NVF that might otherwise striker the reader as odd or confusing. While these facts largely reflect and restate the allegations in paragraphs 1-3 of the Amended Complaint, NVF does not present them as necessary to the determination of its Motion.

1

the U.S. Department of Labor ("DOL"), as required under the TFA, within 180 days of the last alleged act of retaliation purportedly committed by NVF.

Plaintiff's claims against NVF for race and sex discrimination, hostile work environment, and failure to accommodate under the DCHRA are barred because (a) she failed to timely file a complaint within the DCHRA's one-year statute of limitations and (b) her substantive allegations, taken as true, fail to state a claim against NVF for discrimination, hostile work environment or failure to accommodate.

Plaintiff's claims against NVF for retaliation under the DCHRA fail to state a cause of action because being temporarily losing access privileges to online work tools and being placed on administrative leave while continuing to receive full pay are not adverse actions.

Plaintiff's IIED claim against NVF fails because the conduct Plaintiff has identified as supporting such a claim (accepted as true for purposes of the instant motion) conclusively fails to meet the high "extreme and outrageous" standard necessary to support an IIED cause of action under well-established District of Columbia precedent.

Beyond this, to the extent Plaintiff's asserts claims against NVF as a purported successor to Defendant Secure Democracy (and it is not clear that she intends to make such claims), the claims fail because: (1) Plaintiff failed to timely file a complaint with the DOL, as required under the TFA, within 180 days of the last alleged act of retaliation purportedly committed by Secure Democracy; (2) Plaintiff failed to timely file her initial Complaint against Secure Democracy in this matter within the required time parameters established under D.C. Code § 29–412.06, governing claims against dissolved non-profit corporations; (3) Plaintiff's claims for race, sex, hostile work-environment and failure to accommodate against Secure Democracy are also time-barred under the DCHRA; and (4) even in the absence of these multiple procedural bars, Plaintiff

has failed to state a claim against Secure Democracy for discrimination, retaliation, hostile work environment or IIED.

In short, while Plaintiff, without request, abandoned a number of causes of action asserted in her initial Complaint on her own accord, a review of what remains demonstrates that she has still failed to plead any viable claims against NVF. Accordingly, the Court should dismiss the Amended Complaint in its entirety and with prejudice as against NVF, as established below.

## II.     Factual and Procedural Background

### A.     Factual Allegations in the Amended Complaint

*Background of NVF and Its Operations*

Located in Washington, D.C., NVF is a public charity that is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code (IRC) and overseen by an independent board of directors with extensive experience in philanthropy and nonprofit management. *See* Am. Compl. at ¶¶ 1-2, 20. It was founded in 2006 in response to demand from leading philanthropists for an efficient, cost-effective, and time-saving platform to launch and operate public interest projects. *See* Am. Compl. at ¶ 2. In effect, NVF serves as a host platform for projects that that are fiscally sponsored by NVF using funds contributed by such philanthropists or other public contributions. *See* Am. Compl. at ¶¶ 1-3. One such fiscally sponsored project was called Voting Rights Lab (VRL). *See* Am. Compl. at ¶ 6.

VRL was a nonpartisan organization accelerating the movement for free and fair elections through expert analysis, research, and innovations. *See* Am. Compl. at ¶ 3. VRL tracks election-related legislation and current law in all 50 states and the District of Columbia. *See id*. It focuses on policies that restrict or expand voting access and policies that interfere with the nonpartisan administration of our elections. *See id.*

3

*Ms. Walker's Employment with NVF*

Sarah Walker, an African-American female with lupus, was employed on a half-time basis by NVF. Am. Compl. at ¶ 7. Ms. Walker split her time working between VRL and Defendant Secure Democracy, a separate entity with ties to NVF, including shared staffing arrangements for certain employees. *See* Am. Compl. at ¶¶ 5-7. Secure Democracy was also exempt from taxation under the Internal Revenue Code but was not a "public charity" and thus subject to different IRC requirements as to its exempt status as a "social welfare" organization exempt from taxation under Section 501(c)(3) of the IRC. *See* Am. Compl. at ¶ 4.

Ms. Walker was hired at NVF and Secure Democracy on September 26, 2019. Am. Compl. at ¶ 26. At the time of her hire, NVF and Secure Democracy knew that Ms. Walker suffers from lupus. Am. Compl. at ¶¶ 47-48.

*Ms. Walker's Internal Complaints*

According to the Amended Complaint, on June 2, 2020, Ms. Walker was part of a group of persons who anonymously submitted correspondence alleging that non-party VRL had a "white supremacist culture throughout the organization" in which "Black and Brown workers frequently feel disrespected, mistrusted, talked down to and micromanaged. Positive feedback is sporadic." Am. Compl. at ¶55. On June 5, 2020, Ms. Walker discussed her personal allegations of discrimination and harassment in the workplace with Defendant Megan Lewis ("Ms. Lewis"). Am. Compl. at Ex. 2. On June 8, 2020, Ms. Walker authored a 14-page, single-spaced letter alleging a "toxic work environment," "differential treatment," "denial of compensation," and "illicit activity." *Id.*

On December 1, 2020, *after* these events, Ms. Walker was promoted to "Vice President of Advocacy at [non-party] Voting Rights Lab and Executive Director of Secure Democracy" by Ms.

Lewis. Am. Compl. at ¶¶ 39-40.

Ms. Walker raised no other claim related to any form of alleged illegal, unlawful, or otherwise discriminatory conduct between June 7, 2020, and October 28, 2021. Am. Compl. at ¶¶ 39, 132, Ex. 15.

On October 28, 2021, Ms. Walker raised concerns with VRL's Chief of Staff, to human resources at NVF, and to NVF's general counsel. Am. Compl. at ¶¶ 62-64, 152-53. These concerns included, in principal part, allegations of pay inequity, inequitable and disparate treatment of people of color, alleged misrepresentations regarding benefits, alleged mistreatment of Ms. Walker at a recent staff retreat, and that VRL and Secure Democracy were inappropriately intermingled in violation the IRC and regulations applicable to tax exempt organizations. Am. Compl. at ¶¶ 62-72.

*NVF Places Ms. Walker on Paid Administrative Leave*

Following receipt of her October 28, 2021 allegations, Ms. Walker informed VRL she would not continue to perform her job duties and had directed other employees not to perform their job duties. *See* Am. Compl. at ¶ 62. Accordingly, NVF placed Ms. Walker on *paid* administrative leave on October 29, 2021 "pending an investigation of her complaints." Am. Compl. at ¶¶ 73, 85. NVF also removed Ms. Walker's access to its computer and email systems while she was on paid leave. *See* Am. Compl. at ¶¶ 73-78.

NVF immediately commenced an investigation into Ms. Walker's employment-related claims, hiring an experienced outside investigator. *See* Am. Compl. at ¶ 85.[2] Ms. Walker remained on paid administrative leave for a year without objection, *never asking NVF to return her to work*.

---

[2]     However, Ms. Walker refused to cooperate with the investigator and instead hired counsel, so NVF's investigation came to a standstill. *See* Am. Compl. at ¶ 85.

*See* Am. Compl. at ¶¶ 78-89.

While on paid administrative leave for over seven months, on June 10, 2022, Ms. Walker filed a charge with the U.S. Department of Labor (DOL), Occupational Safety and Health Administration (OSHA), regarding her alleged complaints to NVF concerning the purported inappropriate relationship between VRL and Secure Democracy, in violation the IRC and regulations applicable to tax exempt organizations. *See* Exhibit 1, June 10, 2022 Walker DOL-OSHA Charge.

*NVF Terminates Ms. Walker's Employment*

Ms. Walker continued on paid administrative until October 31, 2022 when her employment was terminated by NVF at the request of VRL managers. *See* Am. Compl. at. ¶ 89. NVF notified Ms. Walker, through her counsel, on September 22, 2022, that NVF intended to terminate her employment effective October 31, 2022. *Id*. Ms. Walker did not ask NVF to return to work. *Id*. VRL left sponsorship with NVF on June 16, 2022, meaning Ms. Walker's employment by NVF ended the same as for all staff working for VRL, just a few months later. *See* Am. Compl. at ¶¶ 88-89.

*Ms. Walker Files Suit Claiming Employment Discrimination*

On October 28, 2022, Ms. Walker initiated the underlying lawsuit against NVF, Secure Democracy, and Secure Democracy USA ("SD USA"). *See generally* Doc. 1.

On April 21, 2023, Ms. Walker filed an Amended Complaint, adding Megan Lewis, a co-founder and President of VRL, as a named Defendant. *See generally* Am. Compl.

In the Amended Complaint, Ms. Walker brings seven causes action against Defendants: (1) Retaliation, in violation of the Taxpayer First Act, 26 U.S.C. § 7623(d) ("TFA"), Am. Compl. at ¶¶ 99-107 (Count One); (2) Race Discrimination, in violation of the District of Columbia Human

Rights Act, D.C. Code § 2-1402.11 ("DCHRA"), Am. Compl. at ¶¶ 108-20 (Count Two); (3) Gender Discrimination, in violation of the DCHRA, Am. Compl. at ¶¶ 121-28 (Count Three); (4) Disability Discrimination and Failure to Accommodate, in violation of the DCHRA, Am. Compl. at ¶¶ 129-38 (Count Four); (5) Hostile Work Environment, in violation of the DCHRA, Am. Compl. at ¶¶ 139-48 (Count Five); (6) Retaliation, in violation of the DCHRA, Am. Compl. at ¶¶ 149-63 (Count Six); and (7) Intentional Infliction of Emotional Distress, in violation of District of Columbia law, Am. Compl. at ¶¶ 164-71 (Count Seven).

DCHRA "Discrimination on the Basis of Disability" Claims[3]

The Amended Complaint admits that Ms. Lewis, NVF and Secure Democracy were aware that Ms. Walker suffered from lupus and needed "ongoing medical treatments" prior to Ms. Lewis hiring Ms. Walker in September 2019. Am. Compl. at ¶¶ 23, 47-48. Ms. Walker also admits that Ms. Lewis, NVF and Secure Democracy accommodated all of Ms. Walker's requests to attend to her medical appointments while employed by NVF and Secure Democracy. Am. Compl. at ¶¶ 48-49. And, Ms. Walker further admits, including in connection with her disability discrimination claims, that she "received numerous promotions" in connection with her employment with NVF and Secure Democracy. Am. Compl. at ¶ 132.

Notwithstanding the foregoing, Ms. Walker claims that her alleged request to work on a part-time or modified schedule beginning in the Summer 2021 and continuing through September 2021, was denied. Am. Compl. at ¶ 50. At the same time, however, Ms. Walker admits, that one of her co-workers who "was also diagnosed with lupus" received the identical accommodation Ms. Walker sought "to work part-time and take significant time off." Am. Compl. at ¶ 54. The

---

[3]     The Amended Complaint alleges both failure to accommodate and disparate treatment claims. *See* Am. Compl. at ¶¶ 129-38.

Amended Complaint makes clear that Ms. Walker was fully aware of these events in or around September 2021. Am. Compl. at ¶¶ 50, 80. Ms. Walker does not claim to have been terminated from her employment by NVF "because of her disability." Am. Compl. at ¶¶ 54, 135, 136.

DCHRA "Discrimination on the Basis of Sex" Claim

The first event purported to support Ms. Walker's "Discrimination on the Basis of Sex" claim, occurred in or about May 2020. Am. Compl. at ¶¶ 33, 36, 125-126. The last event purported to support this claim occurred between June 2020 and November 2020. Am. Compl. at ¶¶ 28, 30, 32, 126. The Amended Complaint admits that Ms. Walker was fully aware of all events upon which her sex discrimination claim is based as early as June 24, 2020. Am. Compl. at ¶¶ 36, 80.

DCHRA "Discrimination on the Basis of Race" Claim

The first event purported to support Ms. Walker's "Discrimination on the Basis of Race" claim, occurred in or about May 2020. Am. Compl. at ¶¶ 34, 113-114. The last event purported to support this claim occurred on October 20, 2021. Am. Compl. at ¶¶ 44-45, 113-116. The Amended Complaint, on its face, makes clear that Ms. Walker was fully aware of all events upon which her race discrimination claim is based on or before October 20, 2021. Am. Compl. at ¶¶ 36, 45, 80, 116, Ex.1.

DCHRA "Hostile Work Environment" Claim

The first event(s) purported to support Ms. Walker's "Hostile Work Environment" claim, occurred in or about May 2020. Am. Compl. at ¶¶ 33-34, 36, 113-114, 125-126. The last event purported to support this claim occurred on October 26, 2021. Am. Compl. at ¶¶ 44-45, 113-116. The Amended Complaint, on its face, again makes clear that Ms. Walker was fully aware of all events upon which her hostile work environment claim is based – on or before October 26, 2021. Am. Compl. at ¶¶ 36, 61, 80.

8

DCHRA "Retaliation" Claim

According to the Amended Complaint, on June 2, 2020, Ms. Walker was part of a group who anonymously submitted correspondence alleging that non-party VRL had a "white supremacist culture throughout the organization" in which "Black and Brown workers frequently feel disrespected, mistrusted, talked down to and micromanaged. Positive feedback is sporadic." Am. Compl. at ¶ 55. On June 5, 2020, Ms. Walker discussed her personal allegations of discrimination and harassment in the workplace with Ms. Lewis. Am. Compl. at Ex. 2. On June 8, 2020, Ms. Walker authored a fourteen (14) page single spaced letter outlining various allegations pertaining to among other things, an alleged "toxic work environment" "differential treatment" "denial of compensation" and "illicit activity." *Id.*

Notwithstanding the foregoing, on December 1, 2020, after these events, Ms. Walker was promoted to "Vice President of Advocacy at [non-party] Voting Rights Lab and Executive Director of Secure Democracy" by Ms. Lewis. Am. Compl. at ¶¶ 39-40. Ms. Walker's promotion to Executive Director of Secure Democracy resulted in her attaining the highest leadership role in the organization. Am. Compl. at Ex. 15.

Ms. Walker raised no other claim related to any form of alleged illegal, unlawful or discriminatory conduct between June 7, 2020, and October 28, 2021. Am. Compl. at ¶¶ 39, 132, Ex. 15. The Amended Complaint asserts however, that following Ms. Walker's allegations of "EEO and legal compliance" issues on October 28, 2021, she was suspended from her employment by NVF but continued to receive pay and benefits until October 31, 2022. Am. Compl. at ¶¶ 62-64, 89.

It is undisputed that Ms. Walker's suspension from Secure Democracy, allegedly caused by NVF, was overturned on November 3, 2021, and that Ms. Walker was reinstated on November

4, 2021. Am. Compl. at ¶¶ 75, 76-78.

**B.    The Dissolution of Secure Democracy, "Successor Liability" Claims, and Plaintiff's DOL Complaint**

The Amended Complaint admits that that as of November 4, 2021, Ms. Walker was aware that Secure Democracy was in financial distress and that Secure Democracy was no longer operational by November 30, 2021. Am. Compl. at ¶¶ 78, 82, 84. Ms. Walker evidently seeks to hold NVF and SD USA liable for the conduct alleged against Secure Democracy as "successors" based on an Agreement between Secure Democracy, NVF and SD USA to dissolve Secure Democracy "and to dispose of its remaining assets and liabilities to NVF and SD USA." Am. Compl. at ¶ 82.

On November 9, 2021, Ms. Walker advocated for the dissolution of Secure Democracy. *See* Epstein Gluck Decl.," at ¶ 7, Ex. 7.[4] Critically, Ms. Walker advised that after evaluating Secure Democracy's:

> cash-on-hand, out-standing [sic] invoices, payroll and future liabilities[,] it is clear that without an injection of cash[,] Secure Democracy is not viable . . . My recommendation is that we let contracts up for renewal expire and notify each contractor that we are terminating their contracts with the 30 day out provisions. *If we do not do this by the end of November[,]* we will incur more liabilities. As it stands[,] we are not going to be able to pay our outstanding liabilities through the end of the year . . .
>
> *I would recommend letting the Secure Democracy employees know that this is the plan and allow them to use the remainder of November to exit contract relationships in the best possible manner and make decisions about their future.*

*Id.* (emphasis added). On November 11, 2021, Ms. Walker advised Secure Democracy's staff

---

[4]    As used herein, "Epstein Gluck Decl.," at ¶ __, Ex. __ and "Defts' Ex. __" refers to the set of exhibits and declaration of counsel that accompany the memorandum in support of its motion to dismiss filed contemporaneously by Defendant Secure Democracy. For the convenience of the parties and the court, Defendants have agreed to use a common set of exhibits for their overlapping arguments in their respective motions to dismiss.  NVF hereby incorporates that declaration of counsel and set of exhibits by reference.

about the decision to dissolve. Epstein Gluck Decl.," at ¶ 8, Ex. 8. On November 16, 2021, Ms. Walker emailed Secure Democracy to "check in on the status of the dissolution of Secure Democracy" and provide updates. Epstein Gluck Decl.," at ¶ 9, Ex. 9. Pursuant to Ms. Walker's recommendation, Secure Democracy's Board adopted a resolution for dissolution "pursuant to § 29–412.02 of the District of Columbia Code," resulting in Secure Democracy ceasing operations on November 30, 2021. Am. Compl. at ¶ 82.

Ms. Walker filed a complaint with the DOL on June 10, 2022, claiming that Secure Democracy and NVF had engaged in violations of the TFA. *See* Defts' Ex. 2 at 4-5.  Ms. Walker did not name SD USA as a party to her DOL complaint. *Id.*

On January 14, 2022, Ms. Walker's Counsel forwarded correspondence to Secure Democracy and NVF setting forth the identical claims asserted in the instant matter in a thirteen-page single spaced letter. *See* Defts' Ex. 3.

On February 11, 2022, and February 14, 2022, respectively, NVF and Secure Democracy responded to Ms. Walker's Counsel's January 14, 2022, correspondence rejecting, *inter alia* the same race, sex, disability, retaliation and hostile work environment claims asserted by Ms. Walker in this matter. Defts' Ex. 1, Secure Democracy DOL Response, Ex. C.

Ms. Walker did not file the initial Complaint in this matter until October 28, 2022. *See* Doc. 1.

The Amended Complaint provides: "The Department of Labor has recently affirmed Ms. Walker's ability under the TFA's Kickout Provision to pursue her claim(s) in federal district court for the retaliation against her." Am. Compl. at p.3.

III. **Legal Standard**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6). *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In order to survive a motion to dismiss, the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, the facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating the sufficiency of a complaint, the Court "accept[s] the plaintiff's factual allegations as true and construe[s] the complaint liberally, grant[ing] plaintiff[] the benefit of all inferences that can [reasonably] be derived from the facts alleged." *Browning*, 292 F.3d at 242. "Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the 'mere possibility of misconduct,' the complaint has not shown that the pleader is entitled to relief." *Performance Contracting, Inc. v. Rapid Response Constr., Inc*., 267 F.R.D. 422, 424 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Normally, a motion to dismiss does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). However, dismissal is nevertheless appropriate when the face of the complaint reveals the existence of a meritorious affirmative defense, such as the bar of the applicable statute of limitations. *See e.g.*, *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co*., 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the

facts giving rise to the defense are apparent on the face of the complaint.").

In deciding a motion to dismiss, the Court is permitted to consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the Court may take judicial notice." *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 304 (D.D.C. 2015) (citation and internal quotation marks omitted). "When the plaintiff alleges the filing of an administrative charge, that charge may be deemed incorporated into the complaint and the court can consider it on a motion to dismiss." *Id.* (citations omitted).  As well, in deciding whether to dismiss a claim "the court may consider . . . documents attached as exhibits or incorporated by reference in the complaint . . . or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011) (declining to convert motion to dismiss into summary judgment motion) (internal quotes omitted).

## IV.    Argument

### A.    Ms. Walker Fails to State a Claim of Retaliation Against NVF Under the Taxpayer First Act

In her First Count, Ms. Walker alleges that NVF retaliated against her when it suspended her after she purportedly reported suspected improper tax practices, in violation of the TFA. Am. Compl. at ¶¶ 99-107 (Count I). However, Ms. Walker fails to state a viable TFA retaliation claim because Ms. Walker failed to timely initiate the requisite administrative proceeding before the U.S. Department of Labor (DOL) within 180 days of her suspension from active employment.

The TFA prohibits retaliation against an employee who reports suspected violations of the Internal Revenue Code. 26 U.S.C. § 7623(d)(1)(A). The TFA incorporates the rules, procedures, and burdens of proof set forth in the Wendell H. Ford Aviation Investment and Reform Act for the

21st Century ("AIR21"). 26 U.S.C. § 7623(d)(2)(B)(i) ("An action under subparagraph (A)(i) [of the TFA] shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.").

The TFA independently sets the statutory time period for an aggrieved employee to file an administrative claim with DOL at 180 days. 26 U.S.C. § 7623(d)(2)(B)(iv). The last act of retaliation alleged by Ms. Walker in the Amended Complaint against NVF occurred on ***November 30, 2021***. *See* Am. Compl. at ¶¶ 73-77, 79, 81, 84, 155. Thus, even under a 180-day limitations period, Ms. Walker was required to file her complaint with the DOL by no later than ***May 29, 2022*** – but failed to do so.

Specifically, in the Amended Complaint, Ms. Walker alleges that on October 28, 2021, she "sent several emails" to Anthony Dale, then Chief of Staff of VRL, concerning, among other things, her belief that by being offered a change to working full-time with NVF so she would receive benefits, given her work on behalf of Secure Democracy, would "cause her to violate the Internal Revenue Code." Am. Compl. at ¶ 62. Ms. Walker also alleges that she sent an email to Andrew Schulz,[5] NVF's General Counsel, on the same day expressing similar concerns. Am. Compl. at 1-2, ¶¶ 71-72, 102. Ms. Walker alleges NVF retaliated against her on ***October 29, 2021***, when it "suspended her from all her work," Am. Compl. at 2, ¶ 73, and placed her on paid administrative leave. Am. Compl. at ¶ 75. Although not directly alleged as being retaliatory, Ms. Walker variously states that on ***November 5, 2021*** or ***November 30, 2021***, all Secure Democracy employees except her were offered full-time positions with NVF while she remained on paid leave from NVF. Am. Compl. at ¶¶ 79, 84. And further, that during this time NVF at various times

---

[5]     The Amended Complaint in places misspells Mr. Schulz's surname as "Schultz."  The correct spelling is "Schulz."

suspended her from Secure Democracy without authority and took actions that cut off her access to resources she needed to work on behalf of Secure Democracy, all of which were promptly reversed. Am. Compl. at ¶¶ 73-77, 81.

To preserve her ability to seek any redress under the TFA, Ms. Walker was required to file an administrative complaint with DOL within 180 days of the alleged retaliatory act or acts by NVF.[6] 26 U.S.C. §§ 7623(d)(2)(B)(i), (iv). Therefore, Ms. Walker's needed to file her complaint with DOL on or before *April 27, 2022* (i.e., 180 days from October 29, 2021), and at the latest by *May 29, 2022* ( i.e., 180 days from November 30, 2021). Ms. Walker failed to do so. Instead, Ms. Walker untimely filed a complaint with DOL on *June 10, 2022*, well after her statutory period under the TFA expired. *See* 26 U.S.C. § 7623(d)(2)(B)(iv); Defts' Ex. 2.

As a result, the First Cause of Action purporting to assert a claim against NVF for violations of the TFA is time-barred and should be dismissed with prejudice.

**B.     Ms. Walker Fails to State Claims of Race- and Gender-Based Discrimination Against NVF Under the District of Columbia Human Rights Act**

In her Second and Third Counts, Ms. Walker alleges that NVF discriminated against her

---

[6]     As stated in the Amended Complaint, on August 17, 2022 NVF informed Ms. Walker that VRL had exited NVF on June 16, 2022 to operate independently and was no longer an NVF project, and in September 2022 it informed her that because of this change her employment with NVF would end effective October 31, 2022. *See* Am. Compl. at ¶¶ 88-89. NVF does not understand Ms. Walker to allege that exiting her from employment on October 31, 2022 is an act of retaliation. *See* Am. Compl. at ¶¶ 88, 158. To the extent that Ms. Walker does intend her Amended Complaint to assert that VRL took some action against her in retaliation for having engaged in TFA protected activity, Ms. Walker's retaliation claim against VRL, and through it NVF, also fails. NVF does not contest that VRL existed as of June 10, 2022, the date on which Ms. Walker filed her complaint with DOL. Defts' Ex. 2. However, she does not identify or name VRL as a party in her DOL complaint. *Id.* Neither did she amend that complaint after being informed in September 2022 of the impending end of her employment at NVF effective October 31, 2022. The statutory period for Ms. Walker to amend her complaint to do so or file a new complaint with DOL has long expired. 26 U.S.C. § 7623(d)(2)(B)(iv). Accordingly, Ms. Walker cannot maintain an action for any alleged act or act(s) committed by VRL, and through it NVF, in purported retaliation for having engaged in protected activity. *Id.*

on the basis of her race (Count 2) and gender (Count 3) during her employment, in violation of the DCHRA. Am. Compl. at ¶¶ 108-28. Like Ms. Walker's TFA retaliation claim, Ms. Walker fails to state viable claims of discrimination under the DCHRA because she did not timely initiate this action within the DCHRA's one-year limitations period for each alleged act of unlawful discrimination.

The DCHRA prohibits employers from terminating or otherwise discriminating against an employee on the basis of, among other things, their race and/or gender. D.C. Code § 2-1402.11(a)(1). Under the DCHRA, plaintiffs must bring private causes of action for discrimination claims under the Act "within *one-year* of the unlawful discriminatory act, or the discovery thereof[.]" *Munoz v. Bd. of Trustees of Univ. of Dist. of Columbia*, 590 F. Supp. 2d 21, 26 (D.D.C. 2008) (quoting D.C. Code § 2-1403.16(a)) (internal quotation marks omitted); *see also Sims v. Sunovion Pharms., Inc.*, No. 17-2519, 2019 WL 690343, at *7 (D.D.C. Feb. 19, 2019) (dismissing the plaintiff's DCHRA claims as time-barred by the Act's statute of limitations because the alleged discriminatory acts occurred more than one year before she filed suit).

Here, Ms. Walker initiated the underlying action on October 28, 2022. *See generally* Doc. 1. Thus, to be timely, the allegedly unlawful discriminatory acts must have occurred on or *after October 28, 2021*. D.C. Code § 2-1403.16(a). But, as set out above the latest of the acts Ms. Walker claims to be discriminatory on the basis of either her race or gender in the Amended Complaint occurred, respectively, on **October 20, 2021** and in **November 2020**, *prior* to **October 28, 2021** and all are barred by the DCHRA's statute of limitations. *Id.*[7]

---

[7]    Ms. Walker did not file a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) or the District of Columbia Office of Human Rights (DCOHR) to otherwise toll her statute of limitations under the DCHRA. *See Hatter v. WMATA*, 105 F. Supp. 3d 7, 10 (D.D.C. 2015) ("A charge filed with the EEOC . . . suffices to toll the one-year statute of limitations for DCHRA claims.") (citation omitted).

      **1.**      **Ms. Walker's Race-Based Discrimination Claim in Count 2 is Barred by the DCHRA's Limitations Period**

In the Amended Complaint, Ms. Walker offers the following allegations in support of her DCHRA race discrimination claim:

- Ms. Walker was allegedly advised in *September 2019*, that "her pay was above the salary scale for her position and was non-negotiable," Am. Compl. at *¶¶* 26-27, and then learning in *May 2020* that "a white female" Associate Director of State Government Affairs was being paid above the pay scale for her position. Am. Compl. at *¶¶* 34, 113-114.

- Ms. Walker was allegedly denied a pay increase after being assigned additional work between *March 2020* and *November 2020*. Am. Compl. at ¶¶ 30, 32, 114.

- Ms. Walker purportedly made accommodation requests "*in the summer of 2021*" and "*September 2021*," Am. Compl. at *¶* 50, which were denied, despite "two similarly situated white employees" receiving accommodations. Am. Compl. at ¶ 117.

- Ms. Walker allegedly first learned that she was not eligible for life insurance and disability benefits in *September 2021*, that were provided to another "white female" on *October 20, 2021*. Am. Compl. at ¶¶ 44-45, 113-16.

The Amended Complaint makes clear that Ms. Walker was acutely aware of the alleged conduct by NVF that she claims to be discriminatory because of her race as it happened, or shortly thereafter. *See* Am. Compl. at ¶ 36. Because all of the complained of discriminatory acts allegedly relating to Ms. Walker's race occurred prior to ***October 28, 2021***, Am. Compl. at ¶¶ 108-20, Ms. Walker's race discrimination claim against NVF in her Second Count is barred by the DCHRA's one-year statute of limitations and should be dismissed with prejudice. D.C. Code § 2-1403.16(a).

> **2.     Ms. Walker's Gender-Based Discrimination Claim in Count 3 is Barred by the DCHRA's Limitations Period**

In the Amended Complaint, Ms. Walker offers the following allegations in support of her DCHRA gender discrimination claim:

- Ms. Walker alleges that she was advised in *September 2019* that "her pay was above the salary scale for her position and was non-negotiable," Am. Compl. at ¶¶ 26-27, and then she learned in early *May 2020* "a Hispanic male" was able to negotiate a salary that exceed hers. Am. Compl. at ¶¶ 36, 125-126.

- Ms. Walker alleges that her "male supervisor," who according to Ms. Walker had less education and experience than her, received a salary which was "60% higher" than her own - after she took over his responsibilities between *June 2020* and *November 2020*. Am. Compl. at ¶¶ 28, 30, 32, 126.

Like Ms. Walker's allegations of race-based discrimination, nothing in the Amended Complaint indicates that she was not aware of the alleged conduct NVF engaged in that she claims to be discriminatory because of her gender *as it happened*, or shortly thereafter, with the latest of these events occurring in *November 2020*. *See* Am. Compl. at ¶ 36. Because all of the complained of discriminatory acts allegedly relating to Ms. Walker's gender occurred prior to *October 28, 2021*, Am. Compl. at ¶¶ 121-28, Ms. Walker's gender discrimination claim against NVF in her Third Count is barred by the DCHRA's one-year statute of limitations and should be dismissed with prejudice. D.C. Code § 2-1403.16(a).

> **C.     Ms. Walker Fails to State a Claim of Disability Discrimination Against NVF Under the District of Columbia Human Rights Act**

In her Fourth Count, it does not appear that Ms. Walker claims that NVF discriminated against her on the basis of her disability, in violation of the DCHRA, when she was placed on

18

leave with full pay or when her employment was terminated more than a year later. *See* Am. Compl. at ¶¶ 129-38 (bringing Count 4 against all Defendants but as to NVF only specifically alleging that it discriminated by failing to make an individualized assessment to determine whether she needed accommodation). Regardless of whether Ms. Walker claims that NVF discriminated against her, Ms. Walker's contemporaneous allegations in the Amended Complaint defeat her DCHRA disability claim.

In addition to race and gender, the DCHRA also prohibits employers from terminating or otherwise discriminating against an employee on the basis of their disability. D.C. Code § 2-1402.11(a)(1). To state a claim for disability discrimination under the DCHRA, Ms. Walker must allege that: (1) she had a disability within the meaning of the DCHRA; (2) that she was "qualified' for the position with or without a reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015). Importantly, a complaint fails to state a claim where it fails to show that the plaintiff experienced differential treatment "because of" discriminatory intent.  *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing Title VII, the ADEA and the Rehabilitation Act); *see also Crawford v. Barr*, No. 17-798, 2020 U.S. Dist. LEXIS 226771, at *7 (D.D.C. Sep. 24, 2020) (at the motion-to-dismiss stage, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability.") (citing and quoting *Baloch*).

The concept of a "qualified assessment" goes only to the second element, whether Ms. Walker was "qualified" for the position with or without a reasonable accommodation. Nowhere in the Amended Complaint does Ms. Walker allege that NVF did not deem her qualified because of

her lupus, such that an assessment was needed in the first place. Therefore, failing to afford her an assessment is and was of no moment and cannot establish a claim of discrimination.

Regardless, Ms. Walker's disability discrimination claim cannot stand because she fails to plead that she suffered an adverse employment action *because of* her disability. Simply put, the Amended Complaint is devoid of any factual allegations suggesting that NVF took any adverse action against Ms. Walker on the basis of her disability. *See generally* Am. Compl. To the contrary, the Amended Complaint only includes allegations that NVF took actions that give rise to the opposite inference. Specifically, Ms. Walker alleges that:

- NVF hired her with full knowledge that she suffered from lupus. Am. Compl. at ¶¶ 47-48.

- NVF accommodated all of her medical appointments. Am. Compl. at ¶ 48.

- She was "repeatedly promoted" – a fact which Ms. Walker admits in Count 4 and demonstrates that neither her sex, nor her race, nor her disability status, nor her alleged whistleblowing nor any form of other illegal, unlawful or discriminatory is attributable to any alleged adverse action – yet asserts that NVF discriminated against her because of her disability. Am. Compl. at ¶ 132.

- NVF provided the very accommodation Ms. Walker claims to have been denied to another employee *who also suffered from lupus*. Am. Compl. at ¶ 54.

Ms. Walker's allegations that (1) NVF knew of her disability at the time of her hire, Am. Compl. at ¶¶ 47-48; and (2) the very accommodation she sought was provided to another employee with lupus, Am. Compl. at ¶ 54, significantly undercut any possible inference of discriminatory intent towards Ms. Walker on the basis of her disability. *See, e.g., Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal*., 31 F.3d 209, 215 (4th Cir. 1994) (finding a strong inference that termination was not motivated by bias where employer hired plaintiff despite full knowledge of disability); *Lanci v.*

*Arthur Andersen, LLP*, 96 Civ. 4009 (WK), 2000 U.S. Dist. LEXIS 3954, at *19 (S.D.N.Y. Mar. 28, 2000) ("When the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to him an invidious motivation."); *Whitaker v. Nash Cnty.*, No. 5:11-CV-15-FL, 2012 WL 3840375, at *15 (E.D.N.C. Sept. 5, 2012), *aff'd*, 504 F. App'x 237 (4th Cir. 2013) ("Where [employee provided opportunity sought] is a member of the same protected group as plaintiff, this circumstance does not give rise to an inference of unlawful discrimination.").

Against this backdrop, there are no factual allegations that plausibly raise the inference that anything negative happened to Ms. Walker because of her disability. Accordingly, the Court should dismiss Count 4 of the Amended Complaint for failure to state a claim.

### D.  Ms. Walker Fails to State a Failure to Accommodate Claim Against NVF Under the District of Columbia Human Rights Act

Together with her disability discrimination claim in her Fourth Count, Ms. Walker also alleges that NVF failed to accommodate her disability, in violation of the DCHRA. Am. Compl. at ¶¶ 129-38. For the same reason that Ms. Walker's DCHRA race and gender discrimination claims should be dismissed, Ms. Walker's failure to accommodate claim fails because Ms. Walker did not timely initiate this action within the DCHRA's one-year limitations period.

The DCHRA's one-year limitations period also applies to failure to accommodate claims. D.C. Code § 2-1403.16(a); *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1249 (D.C. 2009). Importantly, "[a] reasonable accommodation claim under the DCHRA is based on discrete acts, not prolonged or repeated conduct." *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 93 (D.D.C. 2012) (citing *Barrett*, 979 at 1248). "Consequently, the statute of limitations bars any claim for relief based on denials of accommodation or revocation of accommodation that occurred more than one year prior to the filing of the complaint." *Leftwich*, 878 F. Supp. 2d at 94 (citing *Barrett*,

979 at 1249).

In support of her failure to accommodate claim, Ms. Walker alleges that beginning in the **Summer of 2021** and continuing through **September 2021**, she purportedly requested from NVF, and was denied, accommodations for her disability. Am. Compl. at ¶¶ 50-53. "Despite Ms. Walker's request for accommodations made a month prior, no attempt was made to inquire what accommodations might be made for Ms. Walker at the [**October 26, 2021**] retreat." Am. Compl. at ¶ 53. The discrete grounds supporting Ms. Walker's failure to accommodate claim arose prior to the statutory cut-off date of **October 28, 2021** and are, thus, not actionable. Am. Compl. at ¶¶ 50-53; *Leftwich*, 878 F. Supp. 2d at 94.

The failure to accommodate claim against NVF in Count 4 is barred by the DCHRA's one-year statute of limitations and should be dismissed with prejudice. D.C. Code § 2-1403.16(a).

### E.    Ms. Walker Fails to State a Hostile Work Environment Claim Against NVF Under the District of Columbia Human Rights Act

In her Fifth Count, Ms. Walker alleges that she was subjected to an unlawful hostile work environment on the basis of her race and gender. Am. Compl. at ¶¶ 139-48. Ms. Walker's hostile work environment claim fails for two reasons: (1) the latest in time of the factual allegations upon which Ms. Walker's claim is based occurred prior to October 28, 2021, outside the DCHRA's one-year limitations period; and (2) Ms. Walker pleads the same allegations to support her hostile work environment claim that she relies upon to support her race and gender claims.

### 1.    Ms. Walker's Hostile Work Environment Claim Is Barred by the DCHRA's Limitations Period

The DCHRA's one-year limitations period discussed above also applies to hostile work environment claims. *See* D.C. Code § 2-1403.16(a); *Lilly v. District of Columbia*, No. 15-738, 2023 U.S. Dist. LEXIS 27988, at *38 (D.D.C. Feb. 21, 2023).

To start, Ms. Walker's hostile work environment claim is premised upon the same allegations that serve as the basis for her time-barred race and gender discrimination claims. *See* Am. Compl. at ¶¶ 59, 143-144.  This is not a permissible basis for her claims. *See Smith v. Jackson*, 539 F. Supp. 2d 116, 138 (D.D.C. 2008) ("[T]he Court notes that insofar as Plaintiff attempts to base his hostile work environment claim on his CWS revocation and AWOL charge, he cannot simply regurgitate his disparate treatment claims in an effort to flesh out a hostile work environment claim."). The only independent allegations outside of Ms. Walker's race and gender claims that she relies upon to support her hostile work environment claim, consist of the following and are insufficient:

- Non-party Liz Avore and Defendant Lewis' refusal to implement Walker's demand that Sonica Coleman who the Amended Complaint also identifies as an "African American female" be disciplined in *February 2021* and *March 2021*. Am. Compl. at ¶¶ 31, 57-58.

- An alleged comment in *February 2021*: "Well you and Sonica don't experience the world the same way as Black women because you have lighter skin." Am. Compl. at ¶ 57.

- Allegedly being told that her "skin is much lighter than Ms. Coleman's" and Ms. Walker herself being accused of "acting in a racist way towards Ms. Coleman by calling out her performance problems" on *March 11, 2021*.  Am. Compl. at ¶ 58.

- Purportedly being required to confront those she claims had discriminated her during a retreat on *October 26, 2021*, and although unclear, apparently not being invited to "happy hour" later that night. Am. Compl. at ¶ 61.

On the face of the Amended Complaint, all of the alleged conduct supporting Ms. Walker's hostile work environment claim, including the identical allegations she offers in support of her race and gender discrimination claims, Am. Compl. at ¶¶ 59, 143-144, occurred prior to *October*

*28, 2021*, outside the DCHRA's one-year limitations period. D.C. Code § 2-1403.16(a).

Accordingly, Ms. Walker's DCHRA hostile work environment claim against NVF should be dismissed with prejudice.

> **2.   Ms. Walker Fails to Allege Conduct that Could Amount to an Unlawful Hostile Work Environment Under the DCHRA**

Assuming, *arguendo*, that the Court chooses to evaluate the sufficiency of Ms. Walker's allegations, her hostile work environment still fails.

To state a claim for hostile work environment, the complaint must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).[8]

In evaluating Ms. Walker's allegations, courts consider "all the circumstances," including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "These standards for judging hostility are sufficiently demanding to ensure that [the DCHRA] does not become a general civility code." *Faragher*, 524 U.S. at 788. "Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender- related jokes, and occasional teasing." *Id.* (internal citation and quotation marks omitted). Moreover, courts have refused to hold "a few isolated

---

[8]       Courts evaluate DCHRA claims using the same framework as applied to Title VII claims. *See, e.g., Wicks v. Am. Transmission Co., LLC*, 701 F. Supp. 2d 38, 44 (D.D.C. 2010) ("Discrimination claims brought under the DCHRA are analyzed in the same manner as claims brought under Title VII[.]") (collecting cases); *Elam v. Bd. of Trs.*, 530 F. Supp. 2d 4, 22 n.7 (D.D.C. 2007) ("The elements of a hostile work environment claim under the DCHRA mirror the federal requirements.") (citation omitted).

incidents of offensive conduct . . . amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citations omitted).

As identified above, Ms. Walker's hostile work environment claim is simply an amalgamation of her race and gender discrimination claims, which "[c]ourts have been reluctant to transform . . . into a cause of action for hostile work environment." *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011); *Franklin v. Potter*, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) ("Because [the] plaintiff's allegedly 'hostile' events 'are the very employment actions he claims are retaliatory, he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.'") (quoting *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005)).

Beyond this, the alleged conduct in the Amended Complaint, even when considered in its totality, is neither severe nor pervasive, but rather, at best, sporadic and cannot give rise to a hostile work environment claim. Rather, any attempt to rescue her time-barred hostile work environment claims would "in effect, seek to transform h[er] challenges to discrete acts of alleged discrimination or retaliation" (e.g., discriminatory pay, being placed on paid leave and termination) "into a hostile work environment claim by combining those events" with:

- A refusal to implement Ms. Walker's request that a fellow African-American woman be disciplined in ***February and March 2021***.

- Two alleged references to Ms. Walker having lighter skin than the aforementioned employee, also in ***February and March 2021***.

- Ms. Walker, herself, allegedly having been accused of "acting in a racist way" towards that same employee in ***March 2021***; and

- Ms. Walker purportedly being required to confront at a retreat those she claims had discriminated against her and not being invited to "happy hour" on ***October 26, 2021***.

Am. Compl. at ¶¶ 31, 57-58, 61, 144.

Again, accepting these all of these allegations as true, the sporadic and disassociated incidents Ms. Walker alleges in the Amended Complaint fail to state a hostile work environment claim. *E.g. Jackson*, 539 F. Supp. 2d at 138. For this additional reason, the Court should dismiss Ms. Walker's DCHRA hostile work environment claim, in Count 5, against NVF.

### F.    Ms. Walker Fails to State a Retaliation Claim Against NVF Under the District of Columbia Human Rights Act

In her Sixth Count, Ms. Walker alleges that NVF retaliated against her by placing her on paid administrative leave after she complained of being subjected to various forms of discrimination and a hostile work environment throughout her employment. Am. Compl. at ¶¶ 55, 152-54, Ex. 2. The DCHRA makes it unlawful to "retaliate against, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected under this chapter." D.C. Code § 2-1402.61(a). To state a claim of retaliation under the DCHRA, Ms. Walker must show that she (1) engaged in a statutorily protected activity; (2) suffered a materially adverse action by her employer; and (3) a causal link "connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).[9] Ms. Walker's failure to adequately plead any one of these elements necessitates dismissal. *See, e.g., Best v. District of Columbia*, No. 20-1134, 2022 U.S. Dist. LEXIS 48120, at *24 (D.D.C. Mar. 17, 2022) (dismissing the plaintiff's DCHRA retaliation claim for failing to adequately plead causation).

Ms. Walker alleges the following in her Amended Complaint: (1) on June 2, 2020, Ms. Walker was part of a group who authored correspondence alleging that non-party VRL had a

---

[9]    "The elements of a retaliatory claim are the same under the DCHRA as under the federal employment discrimination laws." *Leftwich*, 878 F. Supp. 2d at 97 (citation and internal quotation marks omitted).

"white supremacist culture throughout the organization" in which "Black and Brown workers frequently feel disrespected, mistrusted, talked down to and micromanaged . . . Positive feedback is sporadic," Am. Compl. at ¶ 55; (2) on June 5, 2020, Ms. Walker discussed with Defendant Lewis her claims of alleged discrimination and harassment in the workplace, Am. Compl. at Ex. 2; (3) on June 8, 2020, Ms. Walker authored a fourteen-page single-spaced letter outlining various allegations pertaining to among other things, an alleged "toxic work environment," "differential treatment," "denial of compensation," and "illicit activity," *Id*.; (4) on October 28, 2021, Ms. Walker "spoke with Arabella Advisors . . . about discrimination and hostile work environment she experienced," Am. Compl. at ¶¶ 64, 152; and (5) on October 28, 2021, Ms. Walker "emailed Defendant NVF and opposed Defendants' discriminatory treatment based on race, sex, age, and disability." Am. Compl. at ¶¶ 62, 153.

For the purpose of this Motion only, NVF does not contest that Ms. Walker engaged in protected activity under the DCHRA. However, Ms. Walker fails to plead that she was subject to a materially adverse action. In addition, Ms. Walker cannot establish that the protected she may have engaged in was causally connected to, and the "but for" cause of, any materially adverse action. Therefore, Ms. Walker's DCHRA retaliation claim fails.

### 1.      Ms. Walker Fails to Plead that She Was Subject to a Materially Adverse Action

Ms. Walker alleges that following her conversation with Arabella Advisors and communication to NFV on October 28, 2021, NVF took the following actions: (1) she was placed on paid administrative leave on October 29, 2021 pending investigation of her complaints, Am. Compl. at ¶¶ 73, 85, 154; (2) her computer system access and access to her email account were blocked on the same day, which prevented her from performing her job, *Id*.; (3) NVF informed Secure Democracy's Board that Ms. Walker was suspended from Secure Democracy, Am. Compl.

at ¶ 74; and (4) had her computer system access and access to her email account blocked "a second time" on November 20, 2021, Am. Compl. at ¶ 155, "pending an investigation of her complaints." Am. Compl. at ¶ 85. Ms. Walker acknowledges that all of these actions except her paid leave were reversed within days or hours, Am. Compl. at ¶¶ 74-76, or were part and parcel of Secure Democracy being dissolved. Am. Compl. at ¶¶ 81-82.[10]

A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reid v. Buttigieg*, No. 20-1262, 2023 U.S. Dist. LEXIS 30379, at *28 (D.D.C. Feb. 23, 2023) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). This standard requires "objectively tangible harm." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). Material adverse actions include a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Preston*, 559 F.3d 549, 551-52 (D.C. Cir. 2009). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

Ms. Walker contends that the placement of her on paid administrative leave pending investigation coupled with blocking her access to her employer's systems, which prohibited her from working, were materially adverse. Am. Compl. at ¶ 156. However, it is settled that an employee's "placement on paid administrative leave while an investigation is ongoing . . . does

---

[10]     The motion to dismiss and supporting papers filed by Secure Democracy in support of its motion to dismiss the Amended Complaint admirably document that Secure Democracy was dissolved at the recommendation and with the support of Ms. Walker. NVF adopts and relies on those points and authorities in support of its argument here that the effects of that action were neither materially adverse (she supported them) nor taken by NVF as her employer (the dissolution was undertaken by her and Secure Democracy's board of directors). Also see the discussion in Sections H-J, below.

not itself constitute an adverse action." *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016) (collecting cases). Furthermore, limiting or blocking an employee's access to their employer's computer and email systems, which effectively prevents them from performing their job duties or communicating with other employees, does not sufficiently constitute tangible harm to be considered a materially adverse action. *See Reid*, 2023 U.S. Dist. LEXIS 30379 at *35-36 (collecting cases). Ms. Walker admits in the Amended Complaint that she was advised her paid administrative leave was instituted "pending an investigation of her complaints." Am. Compl. at ¶ 85. Consequently, "[t]his case is [] of the ordinary variety where paid leave imparts no tangible consequences." *Reid*, 2023 U.S. Dist. LEXIS 30379 at *35.

Because Ms. Walker fails to allege that she was subjected to a materially adverse action, her DCHRA claim against NVF in Count 6 should be dismissed.

### 2.      Ms. Walker Fails to Plead a Causal Connection

As noted above, Ms. Walker alleges, and NVF assumes for the purpose of this Motion, that she engaged in protected activity between June 2, 2020 and October 28, 2021. Am. Compl. at ¶¶ 55, 62, 64, 152-53, Ex. 2. Although not articulated in her Amended Complaint to be retaliatory, the only materially adverse action that Ms. Walker can assert that she suffered was her ultimate termination from employment with NVF on October 31, 2022. Am. Compl. at ¶ 89 (reporting that NVF informed Ms. Walker that her last day as an NVF employee would be October 31, 2022 but failing to allege that her termination from employment with NVF was in retaliation for engaging in any protected activity). For the purpose of this Motion, NVF will analyze the causation prong of Ms. Walker's retaliation claim based upon her ultimate separation from employment on October 31, 2022.

To demonstrate causality for a DCHRA retaliation claim, "traditional principles of but-for

causation apply, and the plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Segal v. Harris Teeter Supermarkets, Inc*., No. 15-1496, 2016 U.S. Dist. LEXIS 171758, at *24 (D.D.C. Dec. 13, 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)) (internal quotation marks omitted). Often, as Ms. Walker does here, plaintiffs attempt to establish causation through temporal proximity. Temporal proximity can support an inference of causation to survive a motion to dismiss, "but only where the two events are very close in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). However, large gaps of time (e.g., greater than three months) between the engagement in protected activity and an adverse action have been determined to be insufficient to demonstrate causation. *Segal*, 2016 U.S. Dist. LEXIS 171758 at *24-25 (collecting cases); *accord Best*, 2022 U.S. Dist. LEXIS 48120 at *24 (collecting cases).

Here, there is a gap of time in excess of two-years between Ms. Walker's initial engagement in any DCHRA protected activity on June 2, 2020 and her ultimate termination from employment on October 31, 2022. *See* Am. Compl. at ¶¶ 62-64, 71-72. At best, Ms. Walker last engaged in protected activity approximately occurred one year prior to her ultimate termination, on October 28, 2021. Such significant gaps in time between engagement in protected activity and an adverse action do not support an inference of causation. *See, e.g.*, *Greer*, 113 F. Supp. 3d at 312 (finding that two-year gap in time between engagement in protected activity and an adverse action "gives rise to no inference of causation" to defeat a motion to dismiss); *see also Segal*, 2016 U.S. Dist. LEXIS 171758 at *25-26 ("[A] lapse in time of fifteen months—a period five times the length of the general three-month standard for establishing causality and longer than the gaps deemed by the D.C. Circuit to be untenable to support causality[.]").

Moreover, Ms. Walker's allegations of intervening favorable treatment in the Amended

Complaint undercut any possible inference of causation. Notwithstanding Ms. Walker's engagement in DCHRA protected activity, on December 1, 2020, Ms. Walker was *promoted* to the position of Vice President of Advocacy for non-party VRL and Executive Director of Secure Democracy – the highest leadership position within the organization. Am. Compl. at ¶¶ 39, 132, Ex. 15. Such favorable treatment does not support an inference of causation. *See, e.g., McFarland v. George Washington Univ.*, 935 A.2d 337, 356-57 (D.C. 2007) ("[T]racing the sequence quickly exposes an inconvenient fact. After [the plaintiff] had filed his August 1997 discrimination complaint McFarland was promoted to the position of Marketing Manager (in September 1997). It is highly improbable that an employer so offended by an employee's complaint as to fire him in retaliation would first promote him.") (*citing Brady v. Houston Independent School District*, 113 F.3d 1419, 1424 (5th Cir. 1997)) (allegations that a plaintiff was promoted after filing a complaint of discrimination is "utterly inconsistent with an inference of retaliation").

Because Ms. Walker fails to plead a causal connection between her engagement in DCHRA protected activity and an adverse action, Ms. Walker's DCHRA retaliation claim in Count 6 should be dismissed. *E.g. Greer*, 113 F. Supp. 3d at 312; *Segal*, 2016 U.S. Dist. LEXIS 171758 at *25-26; *Best*, 2022 U.S. Dist. LEXIS 48120 at *24-25.

### G.   Ms. Walker Fails to State a Claim for Intentional Infliction of Emotional Distress Under District of Columbia Law

In her Seventh Count, Ms. Walker attempts to bring a claim of intentional infliction of emotional distress (IIED) against NVF, under District of Columbia common law. Ms. Walker's IIED claim is facially defective and can be quickly disposed of.

Briefly, to state a claim of IIED under District of Columbia law, Ms. Walker must allege "(1) extreme or outrageous conduct on the part of the defendant that (2) either intentionally or recklessly (3) caused [her] severe emotional distress." *Daniels v. District of Columbia*, 894 F.

Supp. 2d 61, 68 (D.D.C. 2012) (citing *Pitt v. District of Columbia*, 491 F.3d 494, 505-06 (D.C. Cir. 2007)). The IIED standard is a "very demanding" one that is "only infrequently met." *Holloway v. Howard Univ.*, 206 F. Supp. 3d 446, 453 (D.D.C. 2016) (citation omitted).

"In the employment context, [courts] traditionally have been demanding in the proof required to support an intentional infliction of emotional distress claim." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997). Accordingly, the behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted); *see also Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (Employers have "no general duty of care to avoid causing mental distress, and liability is not imposed for all conduct which causes mental distress.").

Ms. Walker's allegations in the Amended Complaint fall well-short of this rigorous standard. Am. Compl. at ¶¶ 164-65. Simply put, Ms. Walker's allegations in support of her IIED claim are the same as those offered in support of her discrimination and retaliation claims. *Id.* At bottom, the Amended Complaint merely alleges, in conclusory fashion, that the decision to place Ms. Walker on *paid* administrative leave and to terminate her employment, as well as an alleged failure to accommodate Ms. Walker's request to work part-time "constituted severe and outrageous misconduct." Am. Compl. at ¶ 167.

But these are, of course the same type of "mere 'labels and conclusions' that are insufficient to meet Rule 8's pleading requirements." *Grandison v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 18 (D.D.C. 2007) (quoting *Twombly*, 127 S.Ct. at 1965) (dismissing intentional infliction of emotional distress claim premised on termination of employment).

Even accepting Ms. Walker's allegations as true, they do not rise to the level of "extreme"

32

and "outrageous" conduct necessary to plead an IIED claim under District of Columbia law. *See Kerrigan*, 705 A.2d at 628 (finding that even if true, conduct targeting plaintiff for a sexual harassment investigation, manufacturing evidence against him to establish a false claim of sexual harassment, leaking information from the investigation to other employees, and unjustifiably demoting him to the position of store manager to promote a woman to his position, was attributable to "employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct."); *see also Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding conduct not outrageous when employer intentionally interfered with employee's ability to do job, stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others, and dismissed employee).

And this is especially so in the context where the Amended Complaint admits that Ms. Walker was repeatedly promoted and her own narrative demonstrates that within a year of onboarding with NVF she was appointed as Vice President of Advocacy of VRL, leading a department with national responsibilities. Am. Compl. at ¶ 39, 132.

Lastly, "a victim's complaint that [s]he was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work [as alleged here] is insufficient to establish severe distress." *McKinney v. G4S Gov't Sols., Inc*., 711 F. App'x 130, 138 (4th Cir. 2017).

Accordingly, Ms. Walker's IIED claim against NVF should be dismissed.

### H.     Ms. Walker's Claim Under the TFA Under a "Successor Liability" Theory Is Time-Barred

It is fundamental that:

> ***By definition***, a successor in interest retains all of the rights of the original owner and is entitled to enforce those rights. ***Successors in interest may bring suit pursuant to the rights owed to their predecessors or, conversely, defend a suit by employing the rights and/or defenses available to their predecessors.***

*DCFS USA, LLC v. District of Columbia*, 803 F. Supp. 2d 29, 38 (D.D.C. 2011) (quoting Black's Law Dictionary 1832 (9th ed. 2009) (defining 'successor in interest' as '[o]ne who follows another in ownership or control of property" and noting that '[a] successor in interest retains the same rights as the original owner, with no change in substance.") (emphasis added); *see also Democratic Nat'l Comm. v. McCord*, 416 F. Supp. 505, 506 (D.D.C. 1976) (explaining that because certain defendants were trustees of and successors in interest to certain political committees, that they "stand in the same position as, and can assert defenses which would have been available to, the Committees.").

To the extent Ms. Walker's TFA claim against NVF is premised on being a purported "successor" to Secure Democracy, her claim nevertheless fails because all acts of alleged retaliation in the Amended Complainant asserted against Secure Democracy occurred more than 180 days before Plaintiff filed her complaint with the DOL on ***June 10, 2022***.  *See* Defts' Ex. 2.

Here, the last act of retaliation alleged by Ms. Walker in the Amended Complaint against Secure Democracy occurred on ***November 20, 2021***. *See* Am. Compl. at *¶¶* 81, 155. Ms. Walker was required to file her complaint with the DOL against Secure Democracy by no later than ***May 19, 2022***. She did not. *See* Defts' Ex. 2. As a result, the First Cause of Action purporting to assert a claim against Secure Democracy for violations of the TFA is time-barred. And by extension, any claim under the TFA asserted against NVF "as a successor" to Secure Democracy is also time-barred.

## I.      All of Plaintiff's Claims Against NVF as a Purported Successor to Secure Democracy Are Barred by D.C. Code § 29–412.06

D.C. Code § 29–412.06. "Known claims against dissolved corporation" provides:

(a)  A dissolved nonprofit corporation may dispose of the known claims against it by delivering notice to its known claimants of the dissolution at any time after its effective date.

. . . .

(c) A claim against the dissolved nonprofit corporation shall be barred if the claimant:

. . . .

(2) Whose claim was rejected by the dissolved corporation does not commence a proceeding to enforce the claim within 90 days from the effective date of the rejection notice.

*Id.* As asserted in the first sentence of the Amended Complaint: "On October 28, 2021, at 6:06 p.m., Plaintiff Sarah Walker ("Ms. Walker"), the executive director of Secure Democracy ("SD"), sent an e-mail to Andrew Schultz, the general counsel of New Venture Fund ("NVF") altering him to her growing "concerns related to accounting controls and procedures, conflicts of interest, EEO and legal compliance." Am. Compl. at p.1. The Amended Complaint continues, "[o]n November 1, 2021, Ms. Walker emailed Heather Smith, the chair of SD's Board, about the concerns that she had raised with NVF and asserted whistleblower status with Defendant SD." *Id.*

On November 9, 2021, Ms. Walker advocated for the dissolution of Secure Democracy. *See* Epstein Gluck Decl.," at ¶ 7, Ex. 7. Critically, Ms. Walker advised that after evaluating Secure Democracy's:

cash-on-hand, out-standing [sic] invoices, payroll and future liabilities[,] it is clear that without an injection of cash[,] Secure Democracy is not viable . . . My recommendation is that we let contracts up for renewal expire and notify each contractor that we are terminating their contracts with the 30 day out provisions. ***If we do not do this by the end of November[,]*** we will incur more liabilities. As it stands[,] we are not going to be able to pay our outstanding liabilities through the end of the year . . .

***I would recommend letting the Secure Democracy employees know that this is the plan and allow them to use the remainder of November to exit contract relationships in the best possible manner and make decisions about their future***.

*Id.* (emphasis added).

On November 11, 2021, Ms. Walker advised Secure Democracy's staff about the decision

to dissolve. Epstein Gluck Decl.," at ¶ 8, Ex. 8. On November 16, 2021, Ms. Walker emailed Secure Democracy to "check in on the status of the dissolution of Secure Democracy" and provide updates. Epstein Gluck Decl.," at ¶ 9, Ex. 9. On November 17, 2021, pursuant to Ms. Walker's recommendation, Secure Democracy's Board adopted a resolution for dissolution "pursuant to §29–412.02 of the District of Columbia Code before the end of this calendar year." Defts' Ex. 1, Secure Democracy DOL Response, at Ex. C.  Secure Democracy's last day of operations was November 30, 2021. *See* Defts' Ex. 1, Secure Democracy DOL Response, at Ex. B-C; Am. Compl. at ¶ 82. And dissolved on December 20, 2021. Defts' Ex. 1, Secure Democracy DOL Response, at Ex. B; Am. Compl. at ¶ 82.

On January 14, 2022, Ms. Walker's Counsel forwarded correspondence to Secure Democracy and NVF setting forth the identical claims asserted in the instant matter in a thirteen (13) page single spaced letter. Defts' Ex. 3.

On February 11, 2022, and February 14, 2022, respectively, NVF and Secure Democracy responded to Ms. Walker's Counsel's January 14, 2022, correspondence rejecting, *inter alia* the same race, sex, disability, retaliation and hostile work environment claims asserted by Ms. Walker in this matter. Defts' Ex. 1, Secure Democracy DOL Response, at Ex. D.

Ms. Walker accordingly had until ***May 15, 2022***, to file her claims against Secure Democracy under the DCHRA but failed to do so until ***October 28, 2022.***  *See generally* Doc. 1. As a result, ***all claims*** asserted against Secure Democracy in this matter are barred by D.C. Code § 29–412.06.  And accordingly, all claims seeking to hold SD USA and NVF liable as "successors" to Secure Democracy are also barred.

### J.  Because Plaintiff Has Failed to State a Claim Against Secure Democracy for any Cause of Action Asserted in the Amended Complaint, No Successor Liability Can Be Imposed on NVF

NVF respectfully incorporates by reference the arguments set forth in the Secure

36

Democracy's contemporaneously filed Motion to Dismiss.  As set forth therein even if Plaintiff could overcome all of the multiple procedural bars to her claims, which she cannot, Plaintiff has failed to state a claim against Secure Democracy for discrimination, retaliation, hostile work environment or IIED. As a result, there can be no "successor liability" against NVF because Plaintiff's claims against Secure Democracy are legally deficient.

## V.      Conclusion

For the foregoing reasons, Defendant New Venture Fund respectfully requests that the Court dismiss the Amended Complaint, in its entirety, without leave to amend, because the forgoing facts and circumstances show that amendment would be futile.

Respectfully submitted,

Dated: June 2, 2023                         /s/ Joseph E. Schuler
                                            Joseph E. Schuler (DC Bar No. 296269)
                                            Matthew E. Kreiser (No. MD0053)
                                            **Jackson Lewis P.C.**
                                            10701 Parkridge Boulevard
                                            Suite 300
                                            Reston, VA  20191
                                            (703) 483-8300 – Phone
                                            (703) 483-8301 – Fax
                                            Joseph.Schuler@jacksonlewis.com
                                            Matthew.Kreiser@jacksonlewis.com

                                            *Counsel for New Venture Fund*

37