**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ) | | |
| **SARAH WALKER,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| **v.** ) | **Case No.:  1:22-cv-03312-APM** | |
| ) | | |
| **NEW VENTURE FUND,** *et al.*, ) | | |
| ) | | |
| **Defendant.** ) | | |
| ) | | |

**DEFENDANT NEW VENTURE FUND'S REPLY IN SUPPORT**
**OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Dated: June 30, 2023

Joseph E. Schuler (DC Bar. No. 296269)
Matthew E. Kreiser (No. MD0053)
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, VA  20191
joseph.schuler@jacksonlewis.com
bernard.dennis@jacksonlewis.com

*Counsel for New Venture Fund*

## TABLE OF CONTENTS

**Page**

I.     Introduction ...................................................................................................... 1

II.    Review of Central Facts that Plaintiff Misrepresents or Ignores ...................... 2

III.   Legal Standard .................................................................................................. 5

IV.    Argument ........................................................................................................... 6

    A.   Ms. Walker Fails to State a Claim of Retaliation Against NVF
       Under the Taxpayer First Act ...................................................................... 6

        1.   The TFA Statutory Scheme Renders Plaintiff's TF Claim
           Untimely ........................................................................................... 6

        2.   The December 22, 2022 "Kickout Letter" Issued by DOL/OSHA Does
           Not and Cannot Make the Claim Timely. .................................................. 9

        3.   Plaintiff's TFA Claim Should Be Dismissed as Time Barred Pursuant to
           D.C. Code § 29-412.06. ........................................................................ 12

    B.   Ms. Walker Fails to State Claims of Race- and Gender-Based Discrimination
       Against NVF Under the District of Columbia
       Human Rights Act ....................................................................................... 12

    C.   Ms. Walker Fails to State a Claim of Disability Discrimination
       or Failure to Accommodate Under the District
       of Columbia Human Rights Act ................................................................... 13

    D.   Ms. Walker Fails to State a Hostile Work Environment Claim
       Against NVF Under the District of Columbia Human Rights Act ...................... 15

    E.   Ms. Walker Fails to State a Retaliation Claim Against NVF
       Under the District of Columbia Human Rights Act ........................................... 16

    F.   Ms. Walker Fails to State a Claim for Intentional Infliction of Emotional Distress
       Under the District of Columbia Human
       Rights Act .................................................................................................. 19

V.     CONCLUSION .................................................................................................. 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello,*
  294 F.3d 377 (2d Cir. 2002) ........................................................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................................5, 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................................5

*Best v. District of Columbia,*
  No. 20-1134, 2022 U.S. Dist. LEXIS 48120 (D.D.C. Mar. 17, 2022) .......................16

*Brady v. Houston Independent School District,*
  113 F.3d 1419 (5th Cir. 1997) .....................................................................................19

*Brock v. Roadway Express, Inc.,*
  481 U.S. 252 (1987) .....................................................................................................11

*Brookins v. General Motors Corp.,*
  843 F.2d 879 (6th Cir. 1987) .........................................................................................9

*Brooks v. Grundmann,*
  748 F.3d 1273 (D.C. Cir. 2014) ...................................................................................16

*Burford v. Yellen,*
  246 F.Supp.3d 161 (D.D.C. 2017) .................................................................................7

*Chambers v. District of Columbia,*
  35 F.4th 870 (D.C. Cir. 2022) ........................................................................................5

*Competitive Enterprises Institute v. Mann,*
  150 A.3d 1260 (D.C. 2016) ..........................................................................................19

*Conley v. Gibson,*
  355 U.S. 41 (1957) .........................................................................................................5

*Contreras v. Ridge,*
  305 F.Supp.2d 126 (D.D.C. 2004) ...............................................................................10

*Delaware State Coll. v. Ricks,*
  449 U.S. 250 (1980) .......................................................................................................7

*Doe v. Bernabei & Wachtel, PLLC*,
  116 A.3d 1262 (D.C. 2015) ................................................................................19

*Edmonds v. United States*,
  436 F.Supp.2d 28 (D.D.C. 2006) .........................................................................5

*Goldman v. Sears, Roebuck & Co.*,
  607 F.2d 1014 (1st Cir. 1979) ............................................................................10

*Green v. Brennan*,
  578 U.S. 547 (2016) .............................................................................................7

*Greer v. Bd. of Trs. of the Univ. of the D.C.*,
  113 F.Supp.3d 312 (D.D.C. 2015) .....................................................................18

*Harris v. D.C. Water & Sewer Authority*,
  791 F.3d 65 (D.C. Cir. 2015) ...............................................................................6

*Heasley v. D.C. Gen. Hosp.*,
  180 F.Supp.2d 158 (D.D.C. 2002) .....................................................................19

*Henderson v. United States Veterans Administration*,
  790 F.2d 436 (5th Cir. 1986) .............................................................................10

*Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*,
  284 F.Supp.2d 15 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004) ...............19

*Jones v. Bernanke*,
  557 F.3d 670 (D.C. Cir. 2009) ...........................................................................16

*Jones v. Castro*,
  168 F.Supp.3d 167 (D.D.C. 2016) .....................................................................17

*Kerrigan v. Britches of Georgetown, Inc.*,
  705 A.2d 624 (D.C. 1997) .................................................................................19

*Lawson v. FMR LLC*,
  571 U.S. 429 (2014) ...........................................................................................10

*Leftwich v. Gallaudet Univ.*,
  878 F.Supp.2d 81 (D.D.C. 2012) ...............................................................8, 9, 16

*McFarland v. George Washington Univ.*,
  935 A.2d 337 (D.C. 2007) .................................................................................18

*Nono v. George Washington Univ.*,
  245 F.Supp.3d 141 (D.D.C. 2017) .....................................................................19

*Norfolk Southern Ry v. United States DOL,*
  No. 21-3369, 2022 U.S. App. LEXIS 33326 (6th Cir. Dec. 2, 2022) ........................................10

*Nurriddin v. Goldin,*
  382 F.Supp.2d 79 (D.D.C. 2005).................................................................................................16

*Oncale v. Sundowner Offshore Servs., Inc.,*
  523 U.S. 75 (1998) ....................................................................................................................15

*Reid v. Buttigieg,*
  No. 20-1262, 2023 U.S. Dist. LEXIS 30379 (D.D.C. Feb. 23, 2023)........................................17

*Russell v. Principi,*
  257 F.3d 815 (D.C. Cir. 2001)....................................................................................................17

*Segal v. Harris Teeter Supermarkets, Inc.,*
  No. 15-1496, 2016 U.S. Dist. LEXIS 171758 (D.D.C. Dec. 13, 2016) .....................................18

*Stone v. Instrumentation Lab. Co.,*
  591 F.3d 239 (4th Cir. 2009) ......................................................................................................10

**Statutes and Regulations**

D.C. Code § 29-412.06 .................................................................................................................2, 12

26 U.S.C. § 7623(d)(2)(A) .................................................................................................................11

26 U.S.C. § 7623(d)(2)(B) ...............................................................................................................6, 9

29 C.F.R. § 1989.114(a)......................................................................................................................11

iv

**DEFENDANT NEW VENTURE FUND'S REPLY IN SUPPORT**
**OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, New Venture Fund ("Defendant" or "NVF"), by counsel and pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7, submits the following Reply in support of its Motion to Dismiss the Amended Complaint filed against it by Plaintiff Sarah Walker ("Plaintiff" or "Ms. Walker") in its entirety [Doc. 14] (the "Motion").

**I.      Introduction**

In its Memorandum of Points and Authorities in support of the Motion [Doc. 14-1] ("NVF Brief"), NVF establishes that Plaintiff has not stated a viable claim against it under any of her seven causes of action plead in her Amended Complaint.  Plaintiff's Omnibus Opposition [Doc. 17] ("Opposition" or "Opp.") is long on rhetoric but short on legal support and logic.  Simply put, calling out the defendants as supposed hypocrites who damaged Plaintiff's career (which is untrue on both counts) cannot salvage her claims if they are time barred and fail to state causes of action under well-established pleading standards.  Plaintiff's Amended Complaint firmly establishes the dates on or before which the alleged discriminatory acts occurred, and both the date and substance of the alleged retaliatory acts by this Defendant.  Plaintiff's manipulation and distortion of these facts in her Opposition cannot salvage her pleading, because a careful review of her facts as plead confirms as follows.

Plaintiff's claim under the TFA is barred because she failed to timely file a complaint with the U.S. Department of Labor ("DOL"), as required under the TFA, within 180 days of the last alleged act of retaliation purportedly committed by NVF.

Plaintiff's claims against NVF for race and sex discrimination, hostile work environment, and failure to accommodate under the DCHRA are barred because (a) she failed to timely file a

complaint within the DCHRA's one-year statute of limitations and (b) her substantive allegations, taken as true, fail to state a claim against NVF for discrimination, hostile work environment or failure to accommodate.

Plaintiff's claims against NVF for retaliation under the DCHRA fail to state a cause of action because temporarily losing access privileges to online work tools and being placed on administrative leave while continuing to receive full pay are not adverse actions.

Plaintiff's IIED claim against NVF fails because the conduct Plaintiff has identified as supporting such a claim (accepted as true for purposes of the instant motion) conclusively fails to meet the high "extreme and outrageous" standard necessary to support an IIED cause of action under well-established District of Columbia precedent.

As well, Plaintiff claims against NVF as a purported successor to Defendant Secure Democracy ("SD") fail because nothing in her Opposition undercuts that her claims against SD are barred as untimely pursuant to D.C. Code § 29–412.06 and, contrary to her contention, the TFA does not preempt this state law, and because Plaintiff's TFA claims against SD are in any event also barred because Plaintiff failed to timely file a complaint with the DOL against SD within 180 days of the last alleged act of retaliation purportedly committed, as required under the TFA.

## II.   Review of Central Facts that Plaintiff Misrepresents or Ignores

Plaintiff misguidedly focuses on attempting to justify her failure to timely file her TFA complaint with the DOL, despite having retained legal counsel at least as of December 2, 2021. But in doing so, Plaintiff simply exposes several false representations contained in both the Amended Complaint and Plaintiff's Opposition.  For example, Plaintiff maintains that "Defendants told Plaintiff for the first time that SD was dissolved in their Department of Labor response on **August 17, 2022**."  (Opp. at 29.)  Despite the absence of this representation in Plaintiff's initial or

amended pleading, or supported by an affidavit, as Defendants' moving papers reveal, on **January 14, 2022**, **seven (7) months before Defendants DOL response was filed**, Plaintiff's counsel acknowledged "**SD dissolved December 20, 2021.**"  (SD Mot. [Doc. 15] at 7, Ex. 3 at 6 (January 14, 2022, Correspondence)).

Relatedly, and solely through representations of Plaintiff's counsel, the Opposition erroneously submits:  (1) "Plaintiff was still acting as and performing her duties as SD's Executive Director until she discovered it had been dissolved"; (Opp. at 6); and (2) "Plaintiff believed that she was still employed by SD until it was dissolved based in part on her belief that an investigation into her complaints was ongoing and that she received her last paycheck in January.  (*Id.* at 10.) However, Plaintiff's own pleading reveals this is at best irrelevant, and borders on worse:

- The Amended Complaint alleges that **November 19, 2021** was the last date upon which Plaintiff performed any services for SD (Am. Compl. at ¶ 78);

- The Amended Complaint represents that on **November 20, 2021**, Defendants blocked Plaintiff's "access to her email and work accounts," following which "Plaintiff had no ability to continue to work for SD as a result of Defendants' actions" (*Id.* at ¶¶ 81, 155);

- On January 14, 2022, Plaintiff's counsel wrote "in a brazen act of retaliation, NVF effectively terminated Ms. Walker two weeks later.  On or around **November 20, 2021**, [Chief of Staff for non-party VRL, Anthony] Dale contacted Google to claim ownership of the SD accounts, ending Ms. Walker's access to SD accounts."  (SD Mot. at 7, Ex. 3 at 6).

Moreover, Plaintiff's Opposition devotes several pages trying to explain Plaintiff's exposure for advocating and being intimately involved in the dissolution of SD—despite Plaintiff's

claims having been completely blindsided by the dissolution.  Plaintiff's own emails reveal the

truth.  On November 9, 2021, November 11, 2021, and November 16, 2021, Plaintiff's illuminating

emails demonstrate that Plaintiff: (1) recommended that SD be dissolved; (2) recommend that all

SD operations cease by the end of November 2021; (3) recommended that staff should make their

last official day as employees of SD on November 30, 2021; and (4) "checked in" on the status of

SD's dissolution and provided a laundry list of steps for which she had overseen in winding down

SD's affairs.  (Secure Democracy's Motion to Dismiss [Doc. 15] at Epstein Gluck Dec., ¶¶ 7-9,

Ex.7-9.)[1]  Notably, in her November 16, 2021 email, Plaintiff advised the Chair of SD's Board

(among others) that in accordance with her recommendation and the decision to dissolve SD:

- The Regional Directors' last day is the 30th of November.

- Both the Regional Director's and I are de-registering as lobbyists in all of the SD states.  Regional Director's should have this all completed by Thursday [November 18, 2021], mine are getting done as well, but because I am the principal it requires the Regional Directors to complete them first.

- By EOD of Thursday [November 18, 2021] all of our lobbyists and contractors will have been notified that we are using our 30 day out clauses and terminating their registration . . .

- Kay and I are wrapping up our final lobbying trip and just finished with Sec of State Raffensberger.  There is a final dinner tonight and then we should shut down the Amex Card . . .

- Most Regional Director's are taking Thanksgiving week off and will be out of the office for all of next week which is why we are rushing to get through all of this before EOW.

(Secure Democracy's Motion to Dismiss [Doc. 15] at Epstein Gluck Dec. at Ex. 9.)

Beyond this, every representation in the Opposition seeking to explain away Plaintiff's

---

[1] "Epstein Gluck Dec." refers to the Declaration of Amy Epstein Gluck, Esq. filed in connection with Secure Democracy's Motion to Dismiss [Doc. 15-2], which NVF incorporated by reference into its Motion and respectfully incorporates herein by reference.  SD's Motion and Memorandum in support [Doc. 15-1] will be cited herein as "SD's Mot."

clear, written communications during the relevant time period comes not from any pleading or affidavit, but through wholly improper representations of her Counsel.  Plaintiff's counsel's representations are improper because Plaintiff does not (and cannot) herself represent otherwise in any pleading or affidavit, taking her foregoing statements into account at face value.

### III.    Legal Standard

Plaintiff acknowledges that the applicable standard for testing the legal sufficiency of a complaint by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is set by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Remarkably, she then goes on to cite in principal support for her position *Edmonds v. United States*, 436 F.Supp.2d 28 (D.D.C. 2006), a case decided prior to *Twombly* and *Ashcroft*, including for the proposition that "a 'complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of her claim which would entitle her to relief'".  Opp. at 8-9.  The quoted text is from *Conley v Gibson*, 355 U.S. 41, 45-46 (1957), and states the pleading standard displaced by *Twombly* and *Ashcroft*.[2]

Plaintiff also cites in her Opposition to *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), a recent *en banc* decision of the Court of Appeals for the District of Columbia Circuit, although not in her section for the applicable legal standard to apply in deciding a motion to dismiss.  *See* Opposition at 20.  NVF disagrees with Plaintiff that *Chambers* has value for her in assessing these claims of discrimination as such (it does not address timeliness, only what qualifies as an adverse action, *see* 35 F.4th at 873-74), but as applicable here the Court of Appeals

---

[2] In citing to *Edmonds*, Plaintiff neglects to include that decision's reliance on and citation to *Conley v. Gibson* for the proposition.  She also does not report that even under the prior less rigorous standard (what a plaintiff might prove versus what she has actually plead), the court there dismissed the plaintiff's complaint for failing to state viable claims.

does expressly reinforce a district court's gatekeeper function in response to dissenting views that

courts should not displace an employer's discretion to manage its workforce, as follows:

> [W]ell-established case law adequately protects employers from frivolous claims.
> If a Title VII plaintiff fails to plead "'sufficient factual matter'" to state a
> discrimination claim that is "'plausible on its face,'" then the district court should
> dismiss the case before discovery. *Harris v. D.C. Water & Sewer Authority*, 791
> F.3d 65, 68 (D.C. Cir. 2015) (some internal quotation marks omitted) (quoting
> *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*Id.* at 878.

## IV.    Argument

### A.    Ms. Walker Fails to State a Claim of Retaliation Against NVF Under the Taxpayer First Act

#### 1.    The TFA Statutory Scheme Renders Plaintiff's TFA Claim Untimely

As set forth in NVF's Brief, and acknowledged by Plaintiff, under the TFA's statutory

scheme, 26 U.S.C. § 7623(d)(2)(B)(iv), Plaintiff was required to file a Complaint with the U.S.

Department of Labor "not later than 180 days after the date on which the violation occurs." (*Id.*;

Opp. at 9.) This did not occur, and Plaintiff's misleading argument that December 20, 2021 was

the operative date is based on a false premise.

The Amended Complaint is clear that the last alleged retaliatory act by NVF occurred on

October 29, 2021 when it placed Plaintiff on leave with pay. Even if NVF could be deemed liable

for the acts of SD—an independent, self-directed entity that Plaintiff alleges thereafter *instructed*

NVF not to interfere with her work for it (Am. Compl. ¶75)—the last act by SD occurred on

*November 20, 2021*, when "Defendants" blocked Plaintiff's "access to her email and work

accounts," following which "Plaintiff had no ability to continue to work for SD as a result of

Defendants' actions." (Am. Compl. at ¶¶ 81, 155; *see also* ¶78 (identifying November 19, 2021,

as the last date that Plaintiff performed any form of service for SD).) Accordingly, because the

last act of retaliation purportedly committed by SD (or "Defendants," loosely plead) occurred on

**November 20, 2021**, Plaintiff had until **May 19, 2022**, to file her complaint with the DOL. *See* 26 U.S.C. § 7623(d)(2)(B)(iv). Although she was represented by counsel at least as of December 2, 2021,[3] Plaintiff failed to file a complaint with the DOL until June 10, 2022. (Opp. at 11.) Plaintiff's complaint was filed too late.

Attempting to overcome this fatal failure, Plaintiff argues that because she did not receive formal notice of the termination of her employment, she "believed she was still employed by [Secure Democracy] until it was dissolved based in part on her belief that the investigation into her complaints was ongoing and that she received her last paycheck in January" such that, according to Plaintiff, her TFA claim did not begin to accrue until December 20, 2021, when SD was formally dissolved. (Opp. at 10.) This purported justification is a post hoc, improper representation of counsel, which is not contained in any pleading or supported by an affidavit from Plaintiff. Regardless, as another judge of this bench recently reaffirmed:

> The Supreme Court has held that "an ordinary wrongful-discharge claim accrues— and the limitations period begins to run—**when the employer notifies the employee he is fired,** *not on the last day of his employment***."**

*Burford v. Yellen*, 246 F.Supp.3d 161, 181 (D.D.C. 2017) (emphasis added) (dismissing plaintiff's whistleblower claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010) (*quoting Green v. Brennan*, 578 U.S. 547, 564 (2016) ("If an employee gives 'two weeks' notice'—telling his employer he intends to leave after two more weeks of employment—the limitations period begins to run on the day he tells his employer, not his last day at work."); *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980) ("the proper focus is upon the time of the [retaliatory] acts, not upon the time at which the consequences of the acts became most painful

---

[3] (SD's Mot. at Ex. 3 (January 14, 2022, Correspondence).)

. . . [m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination . . . **We conclude for the foregoing reasons that the limitations periods commenced to run when the [adverse employment] decision was made and [the plaintiff] was notified.**") (emphasis added) (internal quotations and citations omitted).

Here, the record before the Court is clear that on November 11, 2021, Plaintiff advised SD's staff as follows:

> It is with great sadness that I am writing to inform you that due to financial limitations **Secure Democracy is beginning the process of closing our virtual doors . . . Given the aforementioned, it also means that I will not be approving or taking on additional contracts at this time** . . . I will be checking in with each of you to answer any questions and offer suggestions on how to talk to each of your contractors . . . **Overall I think the message should be simple, "The employees of Secure Democracy are all moving to a new home . . . It is my understanding that each of you have full-time job offers and I look forward to seeing you continue you continue your remarkable and tireless efforts to protect our democratic institutions**. My recommendation is that you make your last official day at Secure Democracy November 30, 2021.

(SD's Mot., Epstein Gluck Dec., Ex. 8) (emphasis added).  The indisputable timeline of events is clear that on or before **November 11, 2021**, Plaintiff was fully aware:  (1) that a decision to dissolve SD had been made; (2) that her employment and the employment of every other SD employee was being terminated as result; and (3) that she had not been offered alternative employment.  (*Id.*)

Further, and critically, Plaintiff fails to identify any authority, because none exists, standing for the proposition, that a formal written termination was required.  *Leftwich v. Gallaudet Univ.*, 878 F.Supp.2d 81, 96 (D.D.C. 2012) ("No formal discharge is required if the words or conduct of the employer would reasonably lead an employee to believe that he had been fired.") (internal citations and quotations omitted).  Nor does Plaintiff's representation make sense in the context where Plaintiff recommended and was intimately involved in winding down Secure Democracy's

operations by November 30, 2021.  (SD's Mot., Epstein Gluck Dec., Ex. 9.)

Accordingly, and as evident by the record before the Court, (1) Plaintiff's own communications demonstrate that she was aware that the decision to dissolve SD and terminate her employment had been made on or before **November 11, 2021** (*Id.*, Ex. 8); (2) the last alleged act of "retaliation" allegedly committed by SD occurred on **November 20, 2021** (Am. Compl. at ¶¶ 81, 155); and (3) SD fully ceased operations on **November 30, 2021** (*Id.* at ¶ 82).

Against this undisputed background, at a minimum, "a reasonable employee in Plaintiff's position, would know unequivocally" that as of **November 30, 2021**, she no longer had a job with SD such that she would have had until May 19, 2022 at the latest, to file her TFA complaint against NVF with the DOL.  *Leftwich*, 878 F.Supp.2d at 96; *see also* 26 U.S.C. § 7623(d)(2)(B)(iv).  She admittedly failed to do so, and, as a result, Plaintiff's TFA claim against NVF is time-barred.

### 2. The December 22, 2022 "Kickout Letter" Issued by DOL/OSHA Does Not and Cannot Make the Claim Timely

In her Opposition, Plaintiff mistakenly relies on the December 22, 2022 "Kickout Letter" from the Occupational Safety and Health Administration ("OSHA") as official confirmation that there were no timeliness issues regarding her complaint before that body, and that she retains the unassailable right to proceed in this Court on her TFA claim.  *See* Opp. at 11 ("Plaintiff's . . . ability to file her complaint in this court was confirmed by the Department of Labor . . . Plaintiff's complaint with the Department of Labor was valid, pending and live").  Rather, the Kickout Letter is nothing more than an administrative notice that Plaintiff's OSHA complaint has been pending for more than 180 days without a final agency decision.  It is nothing more than the product of bureaucratic inertia and has no impact on Defendant's ability to challenge timeliness now.

As an initial matter, an agency merely accepting a charge is not generally a determination about the charge's timeliness.  Courts have repeatedly concluded this in other contexts.  *See, e.g.,*

*Brookins v. General Motors Corp.*, 843 F.2d 879, 881 (6th Cir. 1987) (finding that a state administrative agency's decision "to dismiss a case for lack of progress does not operate as an adjudication on the merits"); *Henderson v. United States Veterans Administration*, 790 F.2d 436, 441 (5th Cir. 1986) (an agency's decision to accept and investigate a complaint does not suffice to render a claim timely "because agencies may inadvertently overlook timeliness problems and should not thereafter be bound."); *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir. 1979) ("Certainly when the allegations in the complaint indicate that a timely claim was not filed, the agency's boilerplate statement to the contrary, issued without supporting reasons, does not effect a valid dispensation of the statutory requirement.").  Indeed, courts can overturn an agency's explicit finding that a complaint was timely.  *Contreras v. Ridge*, 305 F.Supp.2d 126, 131 (D.D.C. 2004) ("The Department is not bound in this Court by the EEOC's adverse determination on the timeliness issue, and I will review it de novo.").

Moreover, that Plaintiff filed her lawsuit in this Court before OSHA could reach a decision on the question of timeliness does not render that issue moot.  Judicial review is de novo as to all issues.  *Lawson v. FMR LLC*, 571 U.S. 429 (2014) (analyzing another statute that, like the TFA, is modeled on AIR 21 and concluding that "[i]f, however, [the agency] does not issue a final decision within 180 days of the filing of the complaint, and the delay is not due to bad faith on the claimant's part, the claimant may proceed to federal district court for de novo review."); *Contreras*, 305 F.Supp.2d at 131; *see also, Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 248 (4th Cir. 2009) (concluding that review is de novo in the context of a different statute modeled on AIR 21); *Norfolk Southern Ry. v. United states DOL*, No. 21-3369, 2022 U.S. App. LEXIS 33326, at *9 (6th Cir. Dec. 2, 2022) ("We first consider the timeliness of Lancaster's initial complaint to OSHA."). Therefore, it is appropriate for the Court to consider the timeliness of Plaintiff's OSHA complaint.

Equally or more to the point, the underlying statute sets the procedure invoked by Plaintiff, and documented by the Kickout Letter, for *de novo* review by this court. It has nothing to do with a merits determination of any part of the complaint. Pursuant to 26 U.S.C. §7623(d)(2)(A)(ii), a claimant may file suit for claims under the TFA if, after 180 days from filing an administrative complaint, "the Secretary of Labor has **not** issued a final decision."  (Emphasis supplied.)  *See also*, 29 C.F.R. §1989.114(a) ("If the Secretary has not issued a final decision within 180 days . . . the complainant may bring an action at law . . .").  No prior approval from OSHA is required. The Kickout Letter serves as notice of this.  The letter is a two-paragraph document written by an OSHA investigator that does little more than recite a statute and request a copy of a document. *See* Opp. at Exhibit 1 ("I am writing to confirm that it has been over 180 days since you filed the subject OSHA Whistleblower Complaint, as the Secretary has not issued a final decision . . . you may bring a de novo action in Federal District Court.  Once we have documentation of your federal action . . . we will proceed with administratively closing your case . . .").

As the Supreme Court has held, it is the administrative law judge—not the agency investigator—who holds the power to issue conclusions of facts or law.  *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 266 (1987).  *See also* OSHA Whistleblower Investigations Manual ("OSHA Manual"), attached hereto as Exhibit 1, at 24 and n. 3 (same).[4]  The Kickout Letter did not suggest, let alone deliver, a merits decision on any aspect of the claim, including whether the administrative complaint was timely.  The letter contains no citations to law, no findings of fact, and no analysis.  Nevertheless, Plaintiff relies on this letter for the heady contention that OSHA "confirmed" the timeliness of her administrative charge.  And that conclusion, Plaintiff claims, is

---

[4] Available on OSHA's web site at:
https://www.osha.gov/sites/default/files/enforcement/directives/CPL_02-03-011.pdf.  (Site last visited June 25, 2023.)

so rock-solid that to even question it would be "inappropriate" and "frustrate not only the purpose and intent of the statute, but also the Department of Labor's handling of the same."  Opp. at 11-12.

Instead, the Kickout Letter is nothing more than a routine notice to Plaintiff that a certain temporal milestone has been reached.  If a claimant informs OSHA of their intent to file a complaint after the 180-day period has run, then the OSHA Whistleblower Investigations Manual requires investigators to respond in writing and request a copy of the filed complaint.  *See* Exhibit 1 (OSHA Manual), at 90.  Rather than provide an ironclad conclusion of law, the Kickout Letter is nothing more than boilerplate—the mundane operation of bureaucracy, devoid of any substance or meaningful content.

### 3. Plaintiff's TFA Claim Should Be Dismissed as Time Barred Pursuant to D.C. Code § 29–412.06

To the extent Plaintiff contends NVF may be held liable for the conduct attributed to SD, such claims are barred as to NVF because they are barred as to SD pursuant to D.C. Code § 29–412.06.  NVF hereby repeats and adopts the argument presented by SD in section II.A.1 of its reply brief file contemporaneously with the instant filing by NVF.

### B. Ms. Walker Fails to State Claims of Race- and Gender-Based Discrimination Against NVF Under the District of Columbia Human Rights Act

The Opposition fails to refute, or even address, that the last alleged act upon which Plaintiff's sex or mixed sex and race "discrimination" claim is based occurred on November 20, 2020.  (Am. Compl., at ¶¶ 26-27, 28, 30, 32-33, 36, 125-126; SD's Mot. at 14.)  Rather, after filing the Initial and Amended Complaint in this matter, Plaintiff now offers a third theory of "sex discrimination":

> In this case, two comparators can illustrate the disparate treatment: Ms. Tarazi and Ms. Harrington.   Like Plaintiff, both were full-time Vice Presidents with

supervisory responsibilities who suffered from disabilities. Unlike Plaintiff, Ms. Tarazi and Ms. Harrington were allowed to work part-time while retaining their Vice President positions. Am. Compl. ¶¶ 51-54. Ms. Harrington was given disability insurance explicitly because she asked for it. Am. Compl. ¶45.

(Opp. at 24.) However, aside from Plaintiff's identification of comparators of the same sex as Plaintiff, and as Plaintiff's case law even confirms, the purported sex-based discriminatory treatment upon which Plaintiff relies admittedly all took place **prior to October 26, 2021**. (*See* Am. Compl. at ¶¶45, 51-54, identifying the dates of the alleged conduct as explicitly or logically occurring prior to "September 2021", "[o]n or around October 20, 2021," and prior to "a leadership retreat [held] October 26-28, 2021.") As such, Plaintiff's sex discrimination claim Defendants definitively fails both: (1) because her alleged "comparators" are of the same protected class; and (2) as set forth in SD's Motion, because Plaintiff failed to bring her "sex" discrimination claim within the one-year statute of limitations applicable to claims under the DCHRA.

Likewise, the Opposition premises Plaintiff's race "discrimination" claim upon the same alleged conduct as her sex "discrimination" claim and should also be dismissed. Plaintiff alleges that Defendants refused to: (1) offer Plaintiff "a part-time schedule" which was provided to Ms. Tarazi and Ms. Harrington; or (2) "disability insurance" which was provided to Ms. Harrington; with the "only difference between the comparators was that Plaintiff was a Black female." (Opp. at 24.) As set forth above, even if true, any such race-based discriminatory treatment occurred prior to October 26, 2021, and, accordingly, such claim is time-barred under the DCHRA's one year-statute of limitations. (*See* Am. Compl. at ¶¶45, 51-54, identifying the dates of the alleged conduct as explicitly or logically occurring prior to "September 2021", "[o]n or around October 20, 2021," and prior to "a leadership retreat [held] October 26-28, 2021.")

### C.   Ms. Walker Fails to State a Claim of Disability Discrimination or Failure to Accommodate Under the District of Columbia Human Rights Act

In her Opposition, Plaintiff admits—as she must—that she made her request for

accommodation of her alleged disability prior to October 28, 2021.  As such, any claim based on that request is time bared, as set forth in NVF's Brief at Section IV.D.

In an attempt to salvage her claim of disability discrimination and failure to accommodate, Plaintiff now alleges in her Opposition that she "reiterated her request for an accommodation of her disability" on October 28, 2021, citing to her Amended Complaint at paragraphs 63 and 64. *See* Opp. at 23.  This allegation cannot save her claim against NVF for several reasons.

First, the entirety of Plaintiff's disability rights claim against NVF is set forth in paragraph 136 of the Amended Complaint as follows:  "In violation of the DCHRA, Defendant NVF failed to make an individualized assessment to determine whether a reasonable accommodation would enable Plaintiff to continue to perform the essential functions of her position as Vice President of VRL."  She entirely fails to address the argument in NVF's Brief that conducting an individual assessment is a step parties *may* take to determine whether the employee is a qualified individual with a disability.  But it is not a necessary step, and thus no basis for a violation where, as her, Ms. Walker does not allege NVF considered her *not* qualified due to her disability and her allegations in the Amended Complaint plainly show the opposite was true.  *See* NVF Brief at Section IV.C.

Second, contrary to the claim in her Opposition, Plaintiff did not reiterate her request on October 28, 2021.  Paragraph 62 alleges that Plaintiff made her request via email to "Ms. DeSmedt of VRL HR" and references Exhibit 3 to the Amended Complaint in support.  Exhibit 3 shows that instead of requesting accommodation from VRL/NVF, Plaintiff did no more than inquire about "policies or practices" of VRL as to part time work, which she said was "to make sure the same benefits are distributed equitably and consistently" once the organization "make[s] one determination."  As documented by her Exhibit, she asked:

> - Specifically is this an option made available to any full-time employee who has a documentable health concern?

> - At what point does someone in a full-time position opt for disability vs be afforded the opportunity for half-time work with benefits?  I understand that these can tricky questions [sic], but once we make one determination I want to make sure the same benefits are distributed equitably and consistently throughout the organization.

(Am. Compl., at Ex. 3.)

Third, even if asking these question could be deemed as "reiterating" the request she alleges she made in August 2021, the request cannot have been denied and, more to the point, no individual assessment was needed, because immediately after this communication Ms. Walker was placed on leave with pay so she did not have to work, whether full time or part time.

### D.    Ms. Walker Fails to State a Hostile Work Environment Claim Against NVF Under the District of Columbia Human Rights Act

Plaintiff's failure to allege a causal connection between her race and the alleged conduct is fatal to Plaintiff's hostile work environment claim. Both Plaintiff's initial and amended complaints allege that the last alleged act of harassment upon which Plaintiff's "hostile work environment" claim is based occurred on **October 26, 2021**.  (Compl., ¶ 62, Am. Compl., at ¶ 61.)  In an attempt to avoid dismissal, Plaintiff cites to paragraph 96 of the Amended Complaint as demonstrating that "Defendants continued to single out Plaintiff for mistreatment based on her identity as a Black female" during a "two-week period" in November 2021. (Opp. at 25.)

But a review of paragraph 96 is devoid of any allegation that the conduct that Plaintiff claims to have occurred had anything to do with her race.  Paragraph 96 simply states:

> Further, Defendants told SD employees that Ms. Walker was acting maliciously and not to follow any of her directions during the two-week period between her suspensions from SD. Besides being false, this damaged her professional reputation among SD employees and NVF employees who were not part of Defendants retaliatory actions.

(Am. Compl., at ¶ 96.)  Fatal to Plaintiff's argument, the foregoing paragraph is devoid of any statement or even suggestion that this alleged conduct is based on race, racial stereotypes, or racial

animus. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] ... because of ... [race]."); *Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir. 2014) (The "ordinary tribulations of the workplace" such as "petty insults, vindictive behavior and angry recriminations" are not actionable as illegal harassment.)

Plaintiff's failure to allege a causal connection between her race and this alleged conduct defeats her claim for a hostile work environment. *See Nurriddin v. Goldin*, 382 F.Supp.2d 79, 107 (D.D.C. 2005) (*citing Alfano v. Costello*, 294 F.3d 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.")).

### E.    Ms. Walker Fails to State a Retaliation Claim Against NVF Under the District of Columbia Human Rights Act

To state a claim of retaliation under the DCHRA, Ms. Walker must show that she (1) engaged in a statutorily protected activity; (2) suffered a materially adverse action by her employer; and (3) a causal link "connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).[5] Ms. Walker's failure to adequately plead any one of these elements necessitates dismissal. *See, e.g., Best v. District of Columbia*, No. 20-1134, 2022 U.S. Dist. LEXIS 48120, at *24 (D.D.C. Mar. 17, 2022) (dismissing the plaintiff's DCHRA retaliation claim for failing to adequately plead

---

[5] "The elements of a retaliatory claim are the same under the DCHRA as under the federal employment discrimination laws." *Leftwich*, 878 F. Supp. 2d at 97 (citation and internal quotation marks omitted).

causation).

Here, Plaintiff's Opposition does not undercut NVF's authority showing that she did not suffer an adverse action taken by NVF. It is settled law that "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). In her Opposition, Plaintiff fails entirely to discuss or distinguish, let alone refute the authority cited by NVF that "placement on paid administrative leave while an investigation is ongoing . . . does not itself constitute an adverse action." *Jones v. Castro*, 168 F.Supp.3d 169, 179 (D.D.C. 2016) (collecting cases).

Plaintiff does not discuss or distinguish related authority cited by NVF that limiting or blocking an employee's access to their employer's computer and email systems, which effectively prevents them from performing their job duties or communicating with other employees, does not sufficiently constitute tangible harm to be considered a materially adverse action. *See Reid v. Buttigieg,* No. 20-1262, 2023 U.S. Dist. LEXIS 30379, at *35-36 (D.D.C. Feb. 23, 2023) (collecting cases). Ms. Walker admits in the Amended Complaint that she was advised her paid administrative leave was instituted "pending an investigation of her complaints." Am. Compl. at ¶ 85. Consequently, "[t]his case is [] of the ordinary variety where paid leave imparts no tangible consequences." *Reid*, 2023 U.S. Dist. LEXIS 30379 at *35.

Plaintiff also cannot show causation. As discussed by NVF in its opening Brief, she alleges in her Amended Complaint, and NVF assumes for the purpose of this Motion, that she engaged in protected activity between June 2, 2020 and October 28, 2021. Am. Compl., at ¶¶ 55, 62, 64, 152-53, Ex. 2. In her Opposition, she adds to this mix claims to the effect that NVF was responsible with SD for her loss of her position at SD effective November 30, 2021, and argues that the additional circumstances leading to that event are proximate to her reasserting her complaints of

disparate treatment on October 28, 2021.

This does not avail her. There is still a gap of time in excess of sixteen months between Ms. Walker's initial engagement in any DCHRA protected activity on June 2, 2020 and her alleged termination by NVF from employment with SD on November 30, 2021. *See* Am. Compl. at ¶¶ 55, 62-64, 79, 84. Such significant gaps in time between engagement in protected activity and an adverse action do not support an inference of causation. *See, e.g.*, *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F.Supp.3d at 312 (D.D.C. 2015) (finding that two-year gap in time between engagement in protected activity and an adverse action "gives rise to no inference of causation" to defeat a motion to dismiss); *see also Segal v. Harris Teeter Supermarkets, Inc.*, No. 15-1496, 2016 U.S. Dist. LEXIS 171758 at *25-26 (D.D.C. Dec. 13, 2016) ("[A] lapse in time of fifteen months— a period five times the length of the general three-month standard for establishing causality and longer than the gaps deemed by the D.C. Circuit to be untenable to support causality[.]").

Moreover, Ms. Walker's Opposition fails to take into account her own allegations of intervening favorable treatment in the Amended Complaint, which undercut any possible inference of causation. Notwithstanding Ms. Walker's engagement in DCHRA protected activity, on December 1, 2020, Ms. Walker was *promoted* to the position of Vice President of Advocacy for non-party VRL and Executive Director of Secure Democracy – the highest leadership position within the organization. Am. Compl. at ¶¶ 39, 132, Ex. 15. Such favorable treatment does not support an inference of causation. *See, e.g., McFarland v. George Washington Univ.*, 935 A.2d 337, 356-57 (D.C. 2007) ("[T]racing the sequence quickly exposes an inconvenient fact. After [the plaintiff] had filed his August 1997 discrimination complaint McFarland was promoted to the position of Marketing Manager (in September 1997). It is highly improbable that an employer so offended by an employee's complaint as to fire him in retaliation would first promote him.") (*citing*

*Brady v. Houston Independent School District*, 113 F.3d 1419, 1424 (5th Cir. 1997)) (allegations that a plaintiff was promoted after filing a complaint of discrimination is "utterly inconsistent with an inference of retaliation").

### F.     Ms. Walker Fails to State a Claim for Intentional Infliction of Emotional Distress Under District of Columbia Law

As set forth in Defendants SD USA's and Megan Lewis's Reply (which NVF incorporates herein), even when accepted as true (for purposes of the instant motion) and considered in aggregate, Plaintiff's allegations fail to meet the high standard governing IIED claims.  *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997); *Nono v. George Washington Univ.*, 245 F. Supp. 3d 141, 149 (D.D.C. 2017); *Heasley v. D.C. Gen. Hosp.*, 180 F. Supp. 2d 158, 173 (D.D.C. 2002).[6]  Notably, the case Plaintiff does cite for the proposition that retaliating against an employee for "doing the right thing" as meeting the high standard[7]—*Competitive Enterprises Institute v. Mann*, 150 A.3d 1260 (D.C. 2016)—has nothing to do with retaliation as outrageous conduct.

Moreover, Plaintiff cannot base her IIED claim on a group pleading.  To the extent Plaintiff relies upon the conduct of Megan Lewis as establishing claims again Ms. Lewis and other defendants, she does so improperly for the reasons set forth SD USA's and Megan Lewis's Reply.

### V.     Conclusion

For the foregoing reasons and those stated in NVF's Motion and opening Brief, Defendant

---

[6] Plaintiff's Opposition makes no effort to challenge Defendants' arguments or to distinguish the cases cited in Defendants' moving papers.  As a result, the Court may consider Defendants' argument on this point as conceded.  *See e.g., Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004).

[7] *See* Opposition at 33.

New Venture Fund respectfully requests that the Court dismiss the Amended Complaint, in its entirety, without leave to amend, because the forgoing facts and circumstances show that amendment would be futile.

Respectfully submitted,

Dated: June 30, 2023

/s/ Joseph E. Schuler
Joseph E. Schuler (DC Bar No. 296269)
Matthew E. Kreiser (No. MD0053)
**Jackson Lewis P.C.**
10701 Parkridge Boulevard
Suite 300
Reston, VA  20191
(703) 483-8300 – Phone
(703) 483-8301 – Fax
Joseph.Schuler@jacksonlewis.com
Matthew.Kreiser@jacksonlewis.com

*Counsel for New Venture Fund*