**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SARAH WALKER,<br><br>    Plaintiff,<br><br>  v.<br><br>NEW VENTURE FUND, *et. al.*,<br><br>    Defendants. | Case No. 1:22-cv-03312-APM |

**DEFENDANT SECURE DEMOCRACY'S  REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Amy Epstein Gluck (D.C. Bar No. 453525)
**PIERSON FERDINAND LLP**
601 Pennsylvania Ave, NW, Suite 900
Washington, DC 20004
Tel. 301.526.1184

*Attorney for Defendant Secure Democracy*

i

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ..................................................................................iii

II.    RESPONSE TO WALKER'S STATEMENT OF UNDISPUTED FACTS ...................... 2

III.   LEGAL ARGUMENT.................................................................................................... 7

    A.    Walker's Failure To Respond To SD's Statement Of Material Facts Requires That Those Facts Be Deemed Admitted. .......................................................................... 7

    B.    The DCHRA Does Not Apply Extraterritorially To Conduct Occurring Entirely Outside the District of Columbia. .............................................................................. 8

        1.    The DCHRA Requires A Substantial Connection To The District.................... 8

        2.    Mere Incorporation In D.C. Is Insufficient To Establish DCHRA Jurisdiction. 9

        3.    All Relevant Conduct In This Case Occurred Outside The District Of Columbia. ...................................................................................................... 10

        4.    Recent Decisions Confirm The DCHRA's Territorial Limits.......................... 11

    C.    Even If The DCHRA Applied, Walker's Opposition Is Unresponsive And Shows That No Genuine Issue Of Material Fact Exists To Support Walker's Hostile Work Environment Claim....................................................................................................... 12

    D.    There Is No Genuine Issue Of Material Fact Warranting Submission Of Walker's Retaliation Claim To A Jury Even If The DCHRA Applied, Which It Does Not... 14

        1.    Walker Lacks Any Evidence Of A Causal Connection Or Retaliatory Motive. ...................................................................................................................... 14

        2.    Walker Has No Evidence Of Pretext............................................................... 15

        3.    Temporal Proximity Alone Cannot Overcome Undisputed Facts................... 16

IV.    CONCLUSION............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Greer*, 2025 U.S. Dist. LEXIS 138892, (D.D.C. 2025) .................................................. 16

*Amirmokri v. Abraham*, 217 F. Supp. 2d 88 (D.D.C. 2002) .......................................................... 10

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354 (D.C. 1993) ...................................................... 16

*Calobrisi v. Booz Allen Hamilton, Inc.*, 58 F. Supp. 3d 109 (D.D.C. 2014) .................................. 8

*Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012)............................................................. 8, 11

*Conn v. Amer. Nat'l Red Cross*, 149 F. Supp. 3d 136 (D.D.C. 2016) ...................................... 9, 10

*Ekemezie v. CVS Rx Servs., Inc.*, No. CV 17-367 (TJK), 2019 WL 340711 (D.D.C. Jan. 25, 2019)

  ...................................................................................................................................... 10

*Faragher v. Boca Raton*, 524 U.S. 775 (1998)............................................................................ 14

*Furline v. Morrison*, 953 A.2d 344 (D.C. 2008)........................................................................... 15

*Howard Univ. v. Green*, 652 A.2d 41 (D.C. 1994)........................................................................ 14

*Howard v. Locke*, 729 F. Supp. 2d 85 (D.D.C. 2010).................................................................... 8

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145 (D.C. Cir. 1996) . 2

*Kartte v. Davis*, No. CV 21-3310 (JEB), 2022 WL 1442789 (D.D.C. May 6, 2022) .................. 11

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)................................................................... 12

*Lane v. Dep't of Hous. & Cmty. Dev.*, 320 A.3d 1044 (D.C. 2024)............................................ 13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................................................... 15

*McFarland v. George Washington Univ.*, 935 A.2d 337 (D.C. 2007)......................................... 15

*Minter v. District of Columbia*, 809 F.3d 66, 420 U.S. App. D.C. 411 (D.C. Cir. 2015)....... 16, 17

*Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301 (D.C. 2009).................................................... 8, 11

*Nwachuku v. Jackson*, 605 F. Supp. 2d 285, 286 n.1 (D.D.C. 2009) ........................................... 7

*Powell v. Am. Airlines, Inc.*, No. CV 17-1740 (CKK), 2018 WL 2324087 (D.D.C. May 21, 2018)
.............................................................................................................................................. 11

*Recio v. D.C. Alcoholic Beverage Control Bd.*, 75 A.3d 134 (D.C. 2013).................................. 13

*Smith v. District of Columbia*, 430 F.3d 450 (D.C. Cir. 2005)................................................. 3, 4, 6

*Stephenson v. Cox,* 223 F. Supp. 2d 119 (D.D.C. 2002)............................................................... 7

*Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) ...................................................................... 14

*Tippett v. Daly*, 10 A.3d 1123 (D.C. 2010).................................................................................. 13

*United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45 (D.D.C.
  2003)............................................................................................................................................ 7

*Webster v. Potter*, 185 F. Supp. 3d 74 (D.D.C. 2016) .................................................................. 11

*Williams v. D.C.*, 825 F. Supp. 2d 88 (D.D.C. 2011) ................................................................... 12

*Young v. Perdue*, 2024 U.S. Dist. LEXIS 152331 (D.D.C. Aug. 26, 2024)................................. 14

**Statutes**

D.C. Code § 2-1402.11 .................................................................................................................. 15

D.C. Code § 2-1402.61. ................................................................................................................. 16

D.C. Code § 45-201 ....................................................................................................................... 14

**Other Authorities**

OHR Guidance No. 23-02, *Harassment Redefined, Expanded, and Codified under the D.C.
  Human Rights Act*, Office of Human Rights, Wash., D.C., Dec. 9, 2022................................. 14

**Rules**

Federal Rule of Civil Procedure 56(c)(1) ...................................................................................... 4, 9

Federal Rule of Civil Procedure 56(e) ............................................................................................ 9

Local Civil Rule 7(h)(1)........................................................................................................... passim

## I.    **PRELIMINARY STATEMENT**

Defendant Secure Democracy ("SD") respectfully submits this Reply in further support of its Motion for Summary Judgment and Memorandum of Points and Authorities in Support ("Motion") (ECF No. 47). Plaintiff's Opposition (ECF No. 48) does not create any genuine dispute of material facts and ultimately confirms that her claims under the District of Columbia Human Rights Act (the "DCHRA") are both legally and factually deficient.

First, Plaintiff Sarah Walker's ("Plaintiff" or "Walker") failure to respond to SD's Statement of Undisputed Material Facts (ECF No. 47-1) represents a substantive default that, under the Local Rules of this Court and the Honorable Judge Mehta's Order (ECF No. 42), requires those facts to be deemed admitted for the purposes of summary judgment.

Second, the undisputed record shows that all relevant actions occurred outside the District of Columbia. Specifically, Walker always worked remotely from Minnesota, the individuals she accuses of discrimination or retaliation were located outside the District, and the decision to dissolve SD was made by a board operating from New York and Minnesota. Merely incorporating an entity in the District does not trigger the protections of the DCHRA; and courts have consistently ruled that the statute does not apply extraterritorially to conduct that lacks a substantial connection to the District.

Third, even if the DCHRA applied, which it does not, Walker's claims would still fail as a matter of law. The alleged conduct does not meet the threshold for a hostile work environment under either the pre- or post-amendment legal standards, and Walker provides no evidence of a causal connection or pretext to support her retaliation claim. The undisputed facts demonstrate that the dissolution of SD was due solely to the loss of funding, a legitimate, non-retaliatory reason that Walker herself recommended.

In sum, Walker's Opposition confirms that there are no genuine issues of material fact, and her claims are legally untenable. For all these reasons, along with those articulated in SD's Motion, summary judgment should be granted, and the Amended Complaint should be dismissed in its entirety with prejudice.

## II.    RESPONSE TO WALKER'S STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff Sarah Walker, an African-American woman, was jointly employed by NVF and Secure Democracy from September 2019 until late 2021. (Exhibit 1, Deposition of Sarah Walker ("Walker Dep.") at 18:7-21:11). Throughout her employment, she was a remote employee residing in Minnesota. (Id.).

**RESPONSE:**  Other than to admit that Walker is an African American woman, SD **DENIES** the first sentence of paragraph 1 on the grounds that it asserts a legal conclusion rather than a statement of fact. SD **ADMITS** the second sentence of paragraph 1.

2.    Defendant NVF is a District of Columbia non-profit corporation that served as the fiscal sponsor for non-party Voting Rights Lab ("VRL") and provided the human resources, legal, and operational infrastructure for both VRL and Secure Democracy. (Walker Dep. at 19:3-20:12, 72:15-22). Key corporate functions, including legal and human resources, were operated from or directed by personnel attached to its D.C. headquarters. Defendants Secure Democracy and Secure Democracy USA are non-profit corporations formed and existing exclusively in the District of Columbia. No evidence was developed of other locations of the Defendants and any such claim is disputed.

**RESPONSE:** SD **ADMITS** the first sentence of paragraph 2. SD denies the remaining allegations for failure to provide an adequate citation to the record. Under Federal Rule of Civil Procedure 56(c)(1), a party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." *Id.*; *see also* Local Civil Rule 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) (affirming that "the district court is not required to sift through the record" and may disregard unsupported factual assertions). SD **DENIES** the key corporate functions, including legal and human resources, were operated from or directed by personnel attached to its D.C. headquarters. SD did not have or maintain any office space in the District. (*See* SD's "Statement of Undisputed Material Facts," ECF No. 47-1, at ¶¶ 10-11. In addition, SD **DENIES** the remaining allegations other than to admit that SD and SD USA were incorporated in the District. The additional representations lack supporting citations and contradict the record evidence showing that no actions, conduct, or decision-making occurred in the District. (*Id.* at ¶¶ 9-14; 16; 22-23.)

3. Throughout her employment, Ms. Walker was subjected to a pattern of racially charged conduct that created a hostile work environment. Her white supervisors, including Liz Avore (a Colorado resident) and Megan Lewis (a New Jersey resident), repeatedly engaged Ms. Walker in uncomfortable conversations about her race. (Walker Dep. at 35:2-13, 46:9-13).

**RESPONSE:** SD **DENIES** the first sentence of paragraph 3 on the grounds that it asserts a legal conclusion rather than a statement of fact. It is improper to include legal conclusions in a statement of material facts. *See, e.g., Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) ("A party's statement of material facts must contain only factual assertions and not legal conclusions."); *see also* Local Civil Rule 7(h)(1) (requiring statements of "material facts as to which the moving party contends there is no genuine issue," not legal conclusions). SD further **DENIES** that Walker was "subjected to a pattern of racially charged conduct" for the reasons set forth in its "Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment" (ECF No. 47 at 10-17) and those set forth below.

4. Ms. Avore, for example, focused on the color of Ms. Walker's skin compared to that of a darker-skinned Black subordinate, Soncia Coleman, and suggested that Ms. Coleman's darker skin gave her a more credible perspective on matters of race. (Walker Dep. at 27:12-28:16, 39:15-40:22, 45:18-22).

**RESPONSE:**  SD **DENIES** paragraph 4 that Ms. Avore "suggested that Ms. Coleman's darker skin gave her a more credible perspective on matters of race" as unsupported by the referenced citation and further **DENIES** the remainder of paragraph 4 as expressing Walker's perception rather than a statement of fact.

5. When Ms. Walker raised legitimate performance issues regarding Ms. Coleman, her supervisors dismissed them through a racial lens. Ms. Lewis accused Ms. Walker of 'acting in a racist way' and suggested her concerns were invalid because of her lighter skin. (Walker Dep. at 45:5-22). Ms. Avore excused Ms. Coleman's performance issues by attributing them to racial dynamics and her darker skin color. (Walker Dep. at 33:19-34:20).

**RESPONSE:**  SD **DENIES** the first sentence of paragraph 5 on the grounds that it asserts a legal conclusion rather than a statement of fact. It is improper to include legal conclusions in a statement of material facts. *See, e.g., Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) ("A party's statement of material facts must contain only factual assertions and not legal conclusions."); *see also* Local Civil Rule 7(h)(1) (requiring statements of "material facts as to which the moving party contends there is no genuine issue," not legal conclusions). SD further **DENIES** the second sentence of paragraph 5 as the "statement" is not supported by the referenced citation.

6. This conduct forced Ms. Walker into the role of a 'racial counselor' for her superiors, diverting her from her actual work and compelling her to constantly defend her own racial identity. (Walker Dep. at 45:8-14).

**RESPONSE:**  SD **ADMITS** that Walker so testified as such.

7.      Ms. Walker engaged in protected activity on multiple occasions. In June 2020, she co-authored a letter complaining of a 'white supremacist culture' and discriminatory pay practices within the organizations.  (Walker Dep. at 51:21-53:22).

**RESPONSE:** SD **DENIES** the first sentence of paragraph 7 on the grounds that it asserts a legal conclusion rather than a statement of fact. *See, e.g., Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) ("A party's statement of material facts must contain only factual assertions and not legal conclusions."); *see also Local Civil Rule* 7(h)(1) (requiring statements of "material facts as to which the moving party contends there is no genuine issue," not legal conclusions). SD further **DENIES** paragraph 7 insofar as there is nothing in the referenced citation regarding complaints about a "white supremacist culture."  (*See* ECF No. 47-2 (Walker Dep.) at 51:21-53:22.) The record also confirms that on April 1, 2020, Walker received a $50,000.00 salary increase prior to the communication in question. (*See* ECF No. 47-1 at ¶¶ 26-28.)  Then, on June 16, 2020, eight days after this communication, Walker received a promotion and an increase in her salary from $160,750.00 to $180,500.00. (*Id.* at ¶ 31.)  In December 2020, Walker received yet another promotion and raise (*id.* ¶¶ 33-34), ultimately becoming SD's highest paid Vice President. (*Id.* at ¶ 36.)

8.      On October 28, 2021, following a leadership retreat in Portland, Oregon where she felt targeted and singled out, Ms. Walker submitted a detailed, formal complaint to NVF's Human Resources and its General Counsel, Andrew Schulz. (Walker Dep. at 67:1-22, 127:2-21). This complaint alleged ongoing race discrimination, retaliation, and significant 501(c)(3) and 501(c)(4) compliance issues between NVF and Secure Democracy. (Id. at 127:18-21, 128:2-16).

**RESPONSE:** SD **DENIES** the first clause in the first sentence of paragraph 8 because it describes Ms. Walker's feelings, which is not a statement of fact. SD **ADMITS** that Ms. Walker authored a letter to Mr. Schulz. SD **DENIES** the validity of Ms. Walker's claims in the referenced letter for the reasons set forth in its "Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment" (ECF No. 47) and those set forth below. In addition, paragraph 8 refers in part to claims  that have already been dismissed and therefore do not constitute material facts. (*See* ECF No. 22.)

9.      The retaliation was immediate and severe. On October 29, 2021, a single day after her protected Whistleblower complaint, NVF placed Ms. Walker on paid administrative leave and cut off her access to all company systems, including email. (Walker Dep. at 96:9-97:9).

**RESPONSE:** SD **DENIES** the first sentence of paragraph 9 on the grounds that it asserts a legal conclusion rather than a statement of fact. *See, e.g., Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) ("A party's statement of material facts must contain only factual assertions and not legal conclusions."); Local Civil Rule 7(h)(1) (requiring statements of "material facts as to which the moving party contends there is no genuine issue," not legal conclusions). SD **ADMITS** that Walker was placed on paid administrative leave.

10.    While she was reinstated to Secure Democracy on November 3, 2021, NVF and Ms. Lewis began orchestrating the dissolution of Secure Democracy. (Walker Dep. at 123:28-124:21, 130:14-131:22). Ms. Lewis contacted funders and instructed them not to wire money to Secure Democracy, creating a financial crisis for the organization. (Walker Dep. at 130:10-13).

**RESPONSE:** SD **DENIES** paragraph 10, except to admit that Walker was reinstated to Secure Democracy on November 3, 2021. There is no admissible evidence to support the claim that Ms. Lewis and/or NVF "orchestrated the dissolution of Secure Democracy." Walker has admitted that as of November 4, 2021, she was aware that SD was facing significant financial difficulties. (*See* ECF No. 12 at ¶ 78) ("When her suspension from SD ended on November 4, 2021, . . . Ms. Walker had to contend with the fact that SD might not have enough money to pay its existing obligations."). It is also undisputed, as Walker has repeatedly acknowledged, that Ms. Lewis had no authority to act on behalf of SD. (*Id.* at ¶¶ 73-75.) Further, it is undisputed that ***Walker*** recommended the dissolution of SD, which the SD Board then unanimously approved. (*See* ECF No. 47-1 at ¶¶ 78-81.) Additionally, Walker testified that she "does not know the motivation" behind the actions of anyone involved in the dissolution. (*See* ECF No. 47-2 at 119:2-129:3.)

11.    Faced with financial insolvency purposely engineered by NVF, Ms. Walker recommended dissolution to the Secure Democracy board in November 2021, as the only viable option. (SD Statement of Facts, ¶ 78.)

**RESPONSE:** SD **ADMITS** that "Ms. Walker recommended dissolution to the Secure Democracy board in November 2021." SD **DENIES** the remaining allegations set forth in paragraph 11 as wholly unsupported by the citation or anywhere else in the record. "SD Statement of Facts, ¶ 78" provides in its entirety:

On November 9, 2021, Walker recommended to Secure Democracy's Board of Directors, that Secure Democracy should be dissolved advising that after evaluating:

> . . . cash-on-hand, outstanding invoices payroll and future liabilities[,] it is clear that without an injection of cash[,] SD is not viable . . . . My recommendation is that we let contracts up for renewal expire and notify each contractor that we are terminating their contracts with the 30 day out provisions. If we do not do this by the end of November[,] we will incur more liabilities. As it stands[,] we are not going to be able to pay our outstanding liabilities through the end of the year.

(*See* ECF-47-1, ¶ 78 citing Walker email, dated November 9, 2021, Epstein Gluck Declaration, dated June 2, 2023, ECF No. 15-2 at Ex.7 thereto, pp. 17-19 of 25).

12.    The dissolution was used as a pretext to eliminate Ms. Walker. In the wake of the dissolution, every single employee of Secure Democracy-except for Ms. Walker-was offered a full-time position at VRL or the newly created successor entity, SD USA. (Walker Dep. at 134:4-12).

5

**RESPONSE:** SD **DENIES** the first sentence of paragraph 12 on the grounds that it asserts a legal conclusion rather than a statement of fact. *See, e.g., Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) ("A party's statement of material facts must contain only factual assertions and not legal conclusions."); *see also Local Civil Rule* 7(h)(1) (requiring statements of "material facts as to which the moving party contends there is no genuine issue," not legal conclusions). SD also **DENIES** the first sentence of paragraph 12 because it contradicts the evidence in the record. On November 9, 2021, Walker recommended to Secure Democracy's Board of Directors that the organization be dissolved. (*See* ECF No. 47-1 at ¶ 78.) On November 11, 2021, Walker reaffirmed the recommendation to dissolve SD and informed the SD staff about the decision. (*Id.* at ¶ 79.) On November 16, 2021, Walker contacted the SD Board to request an update on the status of the dissolution. (*Id.* at ¶ 80.) As a result of Walker's recommendation, the SD Board, which consisted of two members—one of whom was Walker's husband's law partner—adopted a resolution to dissolve SD. (*Id.* at ¶¶ 81, 83.) SD **ADMITS** that Walker did not seek to continue her employment through VRL, SD USA, or otherwise. (*Id.* at ¶ 86.)

13. Ms. Walker's employment with NVF was formally terminated effective October 31, 2022.

**RESPONSE:** SD **ADMITS** paragraph 13.

### III.    LEGAL ARGUMENT

#### A.  Walker's Failure To Respond To SD's Statement Of Material Facts Requires That Those Facts Be Deemed Admitted.

Federal Rule of Civil Procedure 56(e) provides that if a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and may grant summary judgment if the motion and supporting materials show the movant is entitled to it. *Id.* This Court's Local Rule 7(h) similarly provides: "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.* This Court's Post-Discovery Status Conference Order reiterates this requirement. (ECF No. 42 at 1-2, ¶¶ A-D, requiring compliance with LCvR 7(h).)

This Court has addressed several times the ramifications of a party's failure to address statements of material fact. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion ... addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Nwachuku v. Jackson*, 605 F. Supp. 2d 285, 286 n.1 (D.D.C. 2009) (quoting *United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003)); *c.f. Stephenson v. Cox,* 223 F. Supp. 2d 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the plaintiff and construct legal arguments on h[er] behalf in order to counter those in the motion to dismiss.").

In this case, Walker failed to file a response to SD's Statement of Undisputed Facts (ECF No. 47-1), addressing each numbered paragraph by admitting, denying, or qualifying them. This failure to respond is not just a technicality; rather, it is a substantive error that justifies the Court treating all the facts in SD's Motion for Summary Judgment as admitted. *Nwachuku*, 605 F. Supp.

7

2d at 286 n.1; *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010)(citing LCvR 7(h)). Given that Walker failed to respond to the facts set forth in SD's Statement of Undisputed Facts, those facts, deemed admitted, establish that there is no genuine issue as to any material fact. Accordingly, summary judgment is appropriate in this case.

**B.  The DCHRA Does Not Apply Extraterritorially To Conduct Occurring Entirely Outside the District of Columbia.**

**1.  The DCHRA Requires A Substantial Connection To The District.**

As set forth in SD's Motion, the D.C. Court of Appeals has unequivocally held that the DCHRA does not apply extraterritorially unless the alleged conduct has a substantial connection to the District of Columbia. In *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301 (D.C. 2009), (cited both in ECF No. 47 and the sole case relied upon in Walker's Opposition),[1] the court established that for the DCHRA to apply, "either the discriminatory decision was made in the District, or its effects were felt in the District, or both." *Id.* at 305. This territorial limitation stems from the fundamental purpose of the DCHRA itself, which is "**to secure an end in the District of Columbia to discrimination.**" *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284 (D.D.C. 2012) (emphasis added).

Federal courts interpreting the DCHRA have consistently reinforced these jurisdictional limits. As the court in *Cole* explained, "the DCHRA is not extraterritorial; it does not and cannot secure an end to discrimination in jurisdictions outside of the District of Columbia." *Id.* at 284. The proper inquiry focuses not on where the employer is incorporated or headquartered, but rather on "where the alleged discriminatory decision was made and where it was carried out." *Calobrisi v. Booz Allen Hamilton, Inc.*, 58 F. Supp. 3d 109, 124 (D.D.C. 2014).

---

[1] *See* ECF No. 45-1 at pp. 12-14.

Here, it is undisputed that Walker worked remotely from her home in Minnesota during all relevant times. (*See* ECF 47-1 at ¶¶ 9*;* ECF No. 48 (Opp.) at 3.) While the Opposition claims that Walker had "frequent requirements for out-of-state travel to include meetings in D.C." (ECF No. 48 at 3), Walker testified that she could not recall any trips to the District during her employment with SD or NVF; she believed she may have traveled there on a single occasion between September 2019 and November 2021. (*See* ECF 47-1 at ¶¶ 12-15*.*) Further, it is undisputed that the individuals Walker alleges discriminated or retaliated against her on behalf of SD, Megan Lewis, Liz Alvore, Colin Weaver, Heather Smith, and Ryan Else, all lived and worked outside the District at all relevant times. (*Id.* at ¶¶ 13, 14, 16-21, 83.)

Despite the irrefutable evidence of the extraterritoriality of Walker's claims, Walker argues that the "locus of decision" was in the District because NVF was incorporated there, and she raised complaints with NVF's General Counsel Andrew Schulz. (*See* ECF No. 48 at 9*.*)  However, as Walker admits, the undisputed record evidence shows that Mr. Schulz worked in Maryland at all relevant times. (*Id.*) Further, the mere fact that a corporate officer is associated with a D.C. entity while living and working in Maryland does not establish grounds for asserting jurisdiction under the DCHRA. (*See* ECF No. 45-1 at 12-15.)

### 2. <u>**Mere Incorporation In D.C. Is Insufficient To Establish DCHRA Jurisdiction.**</u>

Courts have repeatedly rejected Walker's argument that mere incorporation or presence in the District is sufficient to establish jurisdiction under the DCHRA. It is not.

In *Conn v. Amer. Nat'l Red Cross*, 149 F. Supp. 3d 136 (D.D.C. 2016), the court dismissed DCHRA claims where the plaintiff worked outside of D.C. and the only connection to D.C. was that the employer was headquartered there. *Id.* The court explained that "the DCHRA is not

9

extraterritorial," and that subject matter jurisdiction cannot be established merely because the employer "is headquartered in or has offices in the District of Columbia." *Id.*

Similarly, in *Ekemezie v. CVS Rx Servs., Inc.*, No. CV 17-367 (TJK), 2019 WL 340711, at *3 (D.D.C. Jan. 25, 2019), the court held "[i]t would not be enough ... to show that the company is headquartered [in the District of Columbia] or has officers [t]here." *Id.* at *3. This principle mirrors venue rules for employment discrimination claims generally, where courts have held that "venue is proper in the judicial district where the alleged unlawful employment practice was committed" not where the employer or alleged discriminating officials reside or maintain their offices. *Amirmokri v. Abraham*, 217 F. Supp. 2d 88, 90 (D.D.C. 2002).

### 3. All Relevant Conduct In This Case Occurred Outside The District Of Columbia.

The undisputed facts establish that neither the employment relationship between Walker and SD nor the decision to dissolve that entity occurred in the District of Columbia. Specifically:

- Walker always worked remotely from Minnesota during her employment with SD (ECF No. 47-1 at ¶ 9);

- The decision to dissolve SD, based on Walker's recommendation, was made by SD's Board of Directors from outside of D.C. and in Minnesota (*id.* at ¶¶ 73-74 83);

- SD had no physical office or operations in the District (*id.* at ¶¶ 10-11); and

- All SD's employees worked remotely from outside D.C. (*id.*).

(*See also* ECF No. 45-1 at ¶¶ 6-7, 12, 60.)

In addition, none of the alleged conduct purportedly supporting Walker's hostile work environment claim occurred in the District of Columbia. (ECF No. 47-1 at ¶¶ 13-14; 16-23; *see generally* ¶¶ 58-67.)

10

These undisputed facts conclusively demonstrate that there is no actionable conduct within D.C. to trigger the DCHRA. Neither the alleged discriminatory decision nor actions occurred in D.C., and their effects were not felt in D.C., only in Minnesota. (*supra.*) Similar to the facts in *Cole, supra*, here, too, the court should dismiss Walker's claims for violation of the DCHRA based on conduct that occurred after the plaintiff was transferred out of D.C. Indeed, there, the court held that "the DCHRA does not apply to acts that neither occurred in D.C. nor had effects that were felt in D.C." *Cole,* 845 F. Supp. 2d at 284. Federal courts have consistently applied this principle to dismiss DCHRA claims where the only connection to D.C. was the employer's incorporation or headquarters. *See e.g., Monteilh*, 982 A.2d at 304-05.

### 4. <u>Recent Decisions Confirm The DCHRA's Territorial Limits.</u>

Recent decisions from this Court reaffirm the territorial limits of the DCHRA. In *Kartte v. Davis*, No. CV 21-3310 (JEB), 2022 WL 1442789, (D.D.C. May 6, 2022), citing to *Monteilh*, 982 A.2d at 304, the court dismissed the DCHRA claims where the plaintiff failed to establish that the discriminatory decision was made in D.C., or its effects were felt there, given that the plaintiff was not in the District when he was informed of his employment termination. *Id.* at *5. Similarly, in *Powell v. Am. Airlines, Inc.*, No. CV 17-1740 (CKK), 2018 WL 2324087 (D.D.C. May 21, 2018), the court held that the DCHRA did not apply to conduct occurring outside D.C., even though the employer had operations in D.C. *Id.* at *2; *see also Webster v. Potter*, 185 F. Supp. 3d 74, 77 (D.D.C. 2016) (dismissing DCHRA claim brought by Metropolitan Washington Airports Authority law enforcement officer who worked at National Airport).

Simply put, the DCHRA does not apply to alleged discriminatory conduct that occurs entirely outside the District, even if the employer is incorporated in D.C. Because Walker worked remotely in Minnesota and the decision to dissolve SD was made outside the District, there is no

actionable conduct within the District to trigger the DCHRA. Accordingly, this Court should grant SD's motion for summary judgment.

### C. Even If The DCHRA Applied, Walker's Opposition Is Unresponsive And Shows That No Genuine Issue Of Material Fact Exists To Support Walker's Hostile Work Environment Claim.

Even if the DCHRA applied to Walker's claims, which it does not, the record is insufficient to support a hostile work environment claim under the relevant legal standard. Walker contends that the "severe or pervasive" standard for hostile work environment claims is no longer valid following the 2022 amendments to the DCHRA, and that the "totality of the circumstances" test should apply. (ECF No. 48 at 11-12.) However, the alleged conduct that supposedly supports her hostile work environment claim occurred before 2022—but SD ceased operations on November 20, 2021. (*See* ECF No. 45-1 at ¶ 59; ECF No. 47-1 at ¶¶ 81-82; *see also* ECF No. 48 at 12.)

There is a well-established presumption that statutory amendments are intended to have a prospective effect unless the legislature clearly expresses an intention for them to apply retroactively. *See Landgraf v. USI Film Products*, 511 U.S. 244 (1994); D.C. Code § 45-201. The 2022 amendment to the DCHRA, which eliminated the "severe or pervasive" requirement, contains no clear legislative intent for *retroactive* application.[2] In fact, D.C. courts apply substantive amendments *prospectively* absent explicit language to the contrary. *Williams v. D.C.*, 825 F. Supp. 2d 88, 96 (D.D.C. 2011)(explaining general presumption against retroactivity) citing

---

[2] In guidance on its website, the District of Columbia Office of Human Rights takes the position that the amendment applies prospectively and not to conduct before the 2022 applicability date specified in the Act. OHR Guidance No. 23-02, *Harassment Redefined, Expanded, and Codified under the D.C. Human Rights Act*, Office of Human Rights, Wash., D.C., Dec. 9, 2022, https://ohr.dc.gov/sites/default/files/dc/sites/ohr/publication/attachments/OHR%20New%20Definition%20of%20Hostile%20Work%20Environment-%20Human%20Rights%20Enhancement%20Act%2002012023%20edit.pdf (site last visited September 19, 2025)

*Tippett v. Daly*, 10 A.3d 1123, 1131 (D.C. 2010) (*en banc*)("Absent a 'clearly expressed intent to the contrary,' courts will 'presume that the amendment does not apply retroactively.'"). Indeed, OHR Enforcement Guidance No. 23-02 clears states that the new provisions apply "where hostile conduct is alleged to have occurred **on or after October 1, 2022**." *See* n.2, *supra.* Courts have repeatedly held that, absent such intent, new legal standards, such as the "totality of the circumstances" test, should not be applied to conduct that occurred before the amendment's effective date. *See, e.g., Recio v. D.C. Alcoholic Beverage Control Bd.*, 75 A.3d 134 (D.C. 2013); *Lane v. Dep't of Hous. & Cmty. Dev.*, 320 A.3d 1044 (D.C. 2024). Applying the amended standard retroactively would violate the presumption against retroactivity and fundamental principles of fair notice and due process.

While the DCHRA, as amended, no longer requires conduct to be "severe or pervasive," the implementing regulations still necessitate an evaluation of the frequency, duration, location, and nature of the conduct, as well as the relative power of the parties involved. *See* D.C. Code § 2-1402.11. In this case, the conduct alleged by Walker,[3] purportedly being subjected to "disparate pay practices" in June 2020,[4] and purportedly being subjected to uncomfortable conversations about race, comments comparing skin tones, and dismissing performance concerns through a racial lens in February and March 2021, falls significantly short of the threshold needed to establish a hostile work environment. They only took "time…away from performing her job responsibilities." (ECF No. 47-1 at ¶ 42.) Nevertheless, SD addressed both the "severe or pervasive" and the "totality of the circumstances" standards in SD's Motion. (*See* ECF No. 47 at 11, 17.)

---

[3] *See* ECF No. 47 at 12; ECF No. 45 at ¶¶ 36-44.

[4] Even accepting this allegation as true, the undisputed record evidence demonstrates that in April 2020, Walker received a $50,000 raise, received several raises and promotions, and, ultimately became SD's highest-paid Vice President. (*See* ECF No. 47-1 at ¶¶ 25, 31-32, 35-36, 40.)

Walker's claim of a hostile work environment fails under both standards. There is no evidence of threats, slurs, epithets, or conduct that is humiliating or degrading enough to alter the terms and conditions of employment. (*Id.* at 12-13; 15-17.) Further, Walker's Opposition does not cite a single case to support her hostile work environment claim. Instead, it relies on speculation, conclusory statements, and reiterates the same conduct already addressed in SD's Motion. Walker fails to address, let alone distinguish, the controlling caselaw cited by SD—including *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998), *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002), and *Young v. Perdue*, 2024 U.S. Dist. LEXIS 152331, at *38 (D.D.C. Aug. 26, 2024)—all of which make clear that the isolated incidents she described do not rise to the level of actionable harassment. Plaintiff's failure to distinguish SD's legal authority or advance any legal authority supporting her position further dooms her claims. In sum, even if the DCHRA were applicable, which it is not, this court should still grant summary judgment for SD on Walker's hostile work environment claim for the reasons set forth in SD's Motion. (ECF No. 47 at 10-17.)

### D.  There Is No Genuine Issue Of Material Fact Warranting Submission Of Walker's Retaliation Claim To A Jury Even If The DCHRA Applied, Which It Does Not.

Walker's Opposition confirms that her retaliation claim must fail because she cannot establish the required causal connection between any protected activity and the adverse action or demonstrate that the legitimate, non-retaliatory reason for SD's dissolution was pretextual.

### 1.  Walker Lacks Any Evidence Of A Causal Connection Or Retaliatory Motive.

To establish a prima facie case of retaliation under the DCHRA, as set forth in ECF No. 47 at 18, Walker must demonstrate: (1) engagement in a protected activity; (2) an adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action. *See Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994); D.C. Code § 2-1402.61. The D.C. Court of Appeals has made clear that a retaliation claim cannot proceed where there is no evidence of a

causal connection between the protected activity and the adverse action—an  employer must have actual knowledge of the protected activity, and the adverse action must be taken in response to it. *See Furline v. Morrison*, 953 A.2d 344 (D.C. 2008); *McFarland v. George Washington Univ.*, 935 A.2d 337 (D.C. 2007).

Here, the undisputed facts, as demonstrated by the documentary evidence and Walker's own admissions, demonstrate that SD ceased to exist solely because its only source of funding was discontinued. (ECF Nos. 47 at 20; and 47-1 at ¶¶ 78, 85.) Walker cites to her own self-serving testimony that after "she was reinstated to Secure Democracy on November 3, 2021, NVF and Ms. Lewis began orchestrating the dissolution of Secure Democracy." (ECF No. 48 at ¶ 10). But there is no evidence to support this claim, and the evidence expressly belies such a claim.

In fact, Walker admits that as of November 4, 2021, she was aware that SD was experiencing significant financial distress. (*See* ECF No. 12 at ¶ 78). Further, it is undisputed, and Walker has repeatedly acknowledged, that Ms. Lewis did not have the authority to act on SD's behalf. (*Id.* at ¶¶ 73-75.) Additionally, it is undisputed that Walker herself recommended the dissolution of SD, which the SD Board subsequently unanimously approved. (*See* ECF No. 47-1 at ¶¶ 78-81, 85.) Moreover, Walker testified that she "does not know the motivation" behind the actions of anyone involved in the dissolution. (*Id.* at ¶¶ 92, 95, 97, 102.) Indeed, there is no such evidence of retaliatory motive or animus at all.

### 2. **Walker Has No Evidence Of Pretext.**

Even if Walker could establish a prima facie case, her claim still fails under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973),  adopted in this District by *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C.

1993). Once an employer articulates a legitimate, non-retaliatory reason for the adverse action, the burden shifts to plaintiff to show that the proffered reason is pretextual. (ECF No. 47 at 18-20.)

Here, there is no evidence of a causal connection between any protected activity and the termination of Walker's employment, or any evidence of pretext. The undisputed facts establish a legitimate, non-retaliatory reason for SD's dissolution: the loss of its only source of funding. *Id.* Courts have repeatedly held that financial necessity, such as loss of funding, constitutes a legitimate, non-retaliatory reason for adverse employment actions. *See Sutherland*, 631 A.2d at 361 (D.C. 1993). The record is devoid of *any* evidence that this reason is pretextual, especially given Walker's own recommendation for dissolution and her lack of knowledge regarding others' motivations. Accordingly, because Walker cannot establish the required causal link, summary judgment should be granted for SD on her retaliation claim under the DCHRA.

### 3.  Temporal Proximity Alone Cannot Overcome Undisputed Facts.

Walker fails entirely to cite to a single fact that supports any inference of retaliation based on proximity. (ECF No. 48 at 14.) To survive summary judgment, "positive evidence beyond mere proximity is required 'to create a genuine issue of material fact concerning whether the motive for an adverse employment action was . . . retaliation,'" *Abbott v. Greer*, 2025 U.S. Dist. LEXIS 138892, *35 (D.D.C. 2025); *Minter v. District of Columbia*, 809 F.3d 66, 71-72, 420 U.S. App. D.C. 411 (D.C. Cir. 2015) (brackets omitted) further citations omitted). There is no such evidence.

Plaintiff's alleged protected activity amounts to two instances, the first of which was a June 2020 letter she co-wrote complaining of a "white supremacist culture." (ECF No. 48 at 13.) While Plaintiff never actually produced a copy of this letter, she authored it sixteen (16) months—nearly a year and a half—before her alleged adverse action in late October 2021. This is far too long a time gap to support a causal inference based on temporal proximity alone, and Plaintiff provides

16

no other evidence to support an inference of causation.

The second instance is the dissolution of SD, *supra.* Even assuming the dissolution followed "closely" after Plaintiff's complaint, proximity alone cannot create a triable issue where, as here, evidence shows the decision was made for a non-retaliatory reason and with Plaintiff's active participation. *See Minter v. District of Columbia*, 809 F.3d 66, 71-72 (D.C. Cir. 2015) ("positive evidence beyond mere proximity" required).

## IV.    CONCLUSION

For the reasons set forth above and those set forth in the Memorandum in Support of its Motion for Summary Judgment, Defendant Secure Democracy respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the Amended Complaint, in its entirety and with prejudice.

Dated: October 3, 2025

Respectfully submitted,

/s/ Amy Epstein Gluck
Amy Epstein Gluck (DC Bar No. 453525)
Pierson Ferdinand LLP
601 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Mail: P.O. Box 288
Cabin John, MD 20818-0288
Tel: 301.526.1184
Amy.EpsteinGluck@pierferd.com

*Counsel for Defendant Secure Democracy*

## CERTIFICATE OF SERVICE

I, Amy Epstein Gluck, certify that on October 3, 2025, I caused the foregoing to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served on all attorneys of record registered with the Court's ECF/CM system.

/s/ Amy Epstein Gluck

Amy Epstein Gluck (DC Bar No. 453525)

18